JAMES B. MURDOCK *v.* YAZOO & MISSISSIPPI VALLEY RAIL-
ROAD COMPANY.

|  |  |
|---|---|
| 77 | 487 |
| 78 | 342 |
| 77 | 487 |
| o83 | 139 |
| 77 | 487 |
| 84 | 123 |

1. RAILROADS. *Passing between cars. Contributory negligence.*

    A plaintiff who undertook, in an open railroad yard, to pass be-
tween two cars of a standing freight train, coupled together,
when an engine was approaching for the purpose of moving the
train, and in so attempting had his foot crushed between the
drawheads, was guilty of contributory negligence and cannot
recover of the railroad company.

2. SAME. *Licensee. Looking and listening.*

    A plaintiff in such case is not relieved from the consequences of
his own negligence by the fact that he was a licensee and looked
and listened but did not see or hear the approaching engine, if
under the circumstances he should have seen or heard it.

FROM the circuit court of Warren county.

-HON. WILLIAM K. McLAURIN, Judge.

Murdock, the appellant, was the plaintiff in the court below;
the railroad company, appellee, was defendant there. At the
close of the plaintiff's evidence, on defendant's application, the
court below gave a peremptory instruction and a judgment for
defendant, and the plaintiff appealed. The facts are stated in
the opinion.

*Dabney & McCabe,* for appellant.

The court below erred in granting the peremptory instruc-
tion for defendant. To warrant the instruction it ought to
have appeared from the evidence, beyond ground for contro-
versy, that danger of the engine moving up and striking the
cars was apparent, or so great that a reasonable person would
have known of it. The evidence does not show any such con-
dition; on the contrary, it shows exactly the reverse.

The following cases are in appellant's favor: *Mississippi,*

*etc., R. R. Co.* v. *Mason,* 51 Miss., 234; *Swan* v. *Liverpool, etc., Co.,* 52 Miss., 704; *New Orleans, etc., R. R. Co.* v. *Mitchell,* 52 Miss., 808; *Whitney* v. *Cook,* 53 Miss., 551; *Carson* v. *Leathers,* 57 Miss., 650; *Vicksburg, etc., R. R. Co.* v. *McGowan,* 62 Miss., 682; *Louisville, etc., R. R. Co.* v. *Thompson,* 64 Miss., 584; *Alabama, etc., Ry. Co.* v. *Summers,* 68 Miss., 566; *Nesbitt* v. *Greenville,* 69 Miss., 22; *Memphis, etc., R. R. Co.* v. *Jobe,* 69 Miss., 452; *Louisville, etc., Ry. Co.* v. *Hirsch,* 69 Miss., 126; *Louisville, etc., Ry. Co.* v. *French,* 69 Miss., 121; *Holmes* v. *Simon,* 71 Miss., 245; *Illinois, etc., R. R. Co.* v. *Turner,* 71 Miss., 402.

*Mayes & Harris,* for appellee.

It is vain for this man to say that he looked and listened. In spite of what his eyes and ears must have told him, he walked directly into danger. Where the state of facts in a case to recover for personal injury is such as to show conclusively that the plaintiff could not have suffered the injury if he had exercised the precaution required of him by law, he will be held to contributory negligence as a matter of law, although his testimony may be that he took such precaution. This is simply the announcement of the doctrine that where a man can see, he must see, and will be held to have seen, and it is no defense for him to say that he did not see.

We cite the following authorities on this point as illustrating the principle of law. They are applied to persons who were crossing the railroad track, and other cases of similar character. See *Artz* v. *Railroad Co.,* 34 Iowa, 153; *Butter* v. *Gettysburg, etc.,* 26 Pa., 160; *Railroad Co.* v. *Elliot,* 28 Ohio State, 340; *Woodward* v. *Railroad Co.,* 106 N. Y., 369; *Troulman* v. *Railroad Co.,* 23 A. & E. Cases, 113; *Holden* v. *Railroad Co.,* 169 Pa. State, 1; *Moore* v. *Railroad Co.,* 128 Pa. State, 249; *Smith* v. *Railroad Co.,* 6 Hun, 624; *Bloomfield* v. *Burlington Railroad Co.,* 74 Iowa, 607; *Marland* v. *Railroad Co.,* 123 Pa. State, 487; *Railroad Co.* v. *Bell,* 162 Pa. State, 64.

Woods, C. J., delivered the opinion of the court.

While it is true, under the facts revealed by the appellant's evidence, that he was not a trespasser in seeking to avail himself of the short cut over appellee's yard in Vicksburg, rather than take the trouble to go two squares farther on a perfectly safe route, and that he was a licensee in entering said yard, it is nevertheless true that he was bound to observe the usual and ordinary care to guard against accident and injury from the engines and cars of the railroad company while being run or switched in the business of the company in its yard. He undertook to do the act, always unsafe and oftentimes dangerous, of passing between two cars coupled up, and constituting a part of a standing train, though at the moment of his beginning his venture no engine was attached to it.

His own evidence shows that he came down Klein street from the east until he reached the point where that street abruptly fell several feet into the appellee's yards, which were constantly used, as necessity arose, in doing the switching of the company. Descending the flight of steps at the point where Klein street fell into this yard, he discovered a standing train of twenty-four or twenty-five box cars, unattached to an engine, standing on one of the many tracks which gridironed the yard, but with no opening between the cars for the passage of pedestrians, and only persons on foot did or could use this short cut over the tracks and through the yard. From his own evidence, and from that of all other witnesses examined on this point, the custom of the railroad was to make an opening between cars thus left, that persons passing might go through. On this particular occasion, and for the first and only time, he found his way across the yard blocked by a solid train of about twenty-five cars. When he had descended the steps from Klein street into the yard, he says he looked and listened, but saw neither engines nor cars, except the train immediately in his way. He then walked twenty-five or thirty feet, and when in two or three feet of these standing cars he again looked and listened,

and still seeing no other cars in the yard, nor any engine at all, though the yard was open and level, he caught hold of the stanchions or rods affixed to the cars, swung himself up, placed a foot on a drawhead, and was instantly caught, and his foot so crushed as to necessitate its amputation. The injury was occasioned by backing up of nine other box cars, which an engine had picked up in the yard, and had rapidly and violently pushed down in front of the engine and attached to the train of twenty-five cars already coupled up, between two of which appellant was endeavoring to pass. The truth appears to be that these twenty-five cars constituted about three-fourths of a freight train then made up and ready to depart on its northward journey so soon as the nine cars mentioned should be picked up by the engine and coupled to the other twenty-five cars then standing in the yard and ready to be carried out.

It is almost incredible that one attentively observant of his surroundings, under the circumstances of this case, did not and could not have seen, in this perfectly open and level yard, the engine and nine cars which the occurrence demonstrates were there and near at hand. While the appellant says he looked and listened, when within two or three feet of the cars between which he attempted to pass, and saw nothing and heard nothing, still it must be remembered that in an instant afterward, and after the appellant had only stepped two or three feet, and had swung himself up between the cars, and put his foot on the drawhead, the nine cars being pushed by the engine struck the standing train which he was attempting to cross over.

But we are not left to conjecture or inference as to the presence of the engine and nine cars in the yard. Appellant's witness, Crutchfield, testified that he was standing in the yard and near the steps when the injury to appellant occurred; that he saw the engine come out of the roundhouse, which by the diagram appears to have been quite near at hand, and saw it run up to a switch, back down and couple on to the nine box cars standing near the roundhouse, or caboose track (for he

uses both expressions), and then pull down and couple on to the twenty-five cars standing on the track.

Admitting that appellant did not see any engine or cars, other than the twenty-five which stood across his contemplated way, yet it is manifest that the engine and nine cars were there, and near by, and though appellant did not see them, that fact is not controlling, because the final test is, could and should he have seen them under the circumstances testified to by himself and his witness? That an affirmative answer must be given we entertain no doubt, and the peremptory instruction of the court below was correctly given.

*Affirmed.*