SYLVESTER NICHOLS, ADMINISTRATOR *v.* GULF & SHIP ISLAND RAILROAD COMPANY.

1. INSTRUCTIONS. *Harmless error.*
    If a defendant be entitled to a peremptory instruction, which is refused him, a verdict in his favor will not be set aside or a judgment thereon reversed because of other instructions, however erroneous, given at his request.

2. RAILROADS. *Evidence. Code* 1892, § 1808. *Presumptions.*
    Code 1892, § 1808, making proof of injury inflicted by the running of locomotives or cars *prima facie* evidence of the want of skill and care on the part of the servants of the railroad company, cannot be invoked where all the circumstances connected with such an injury are proved.

Statement of the case.

3. LICENSEE. *Ordinary care. Contributory negligence. Suit for death.*

A licensee is charged with the duty, at least, of ordinary care to avoid injury; if he disregard information and voluntarily place himself in a position of obvious danger, relying upon the care of others for protection, and is killed in consequence thereof, his contributory negligence will defeat a recovery by his personal representative for his death.

4. ADMINISTRATOR. *Suits by.   Costs.   Code* 1892, § 881.   *Certificate of probable cause.   Voluntary bond.*

Where a verdict is rendered against an administrator in a suit brought by him, and he obtain a certificate from the court, under Code 1892, § 881, exempting him personally from costs upon such certificate, that there was probable cause for bringing the suit, a judgment for costs should not be rendered against the sureties on a voluntary bond given by the plaintiff limiting their liability to the payment of such costs as might be adjudged against the plaintiff individually.

5. COST BONDS. *Voluntary.   Code* 1892, § 946.

Code 1892, § 946, providing that bonds executed in any legal proceeding shall, when received and acted upon as valid, be binding as if made in full compliance with law, no matter how defective, has no application to voluntary bonds, and a cost bond is a voluntary one if given in a suit after the court has adjudged its execution unnecessary

FROM the circuit court of, first district, Hinds county.

HON. ROBERT POWELL, Judge.

Sylvester Nichols, administrator of the estate of Jack Nichols, deceased, appellant, was plaintiff in the court below; the railroad company, appellee, was defendant there.

The suit was for the alleged wrongful killing by the railroad company of plaintiff's intestate one Captain Jack Nichols, a ship carpenter by trade, who was in the Confederate States Navy and served during the Civil War, 1861-1865, with Admiral Semmes, on board the Confederate States steamers, the Sumter and the Alabama. At the time of his death, November 7, 1901, decedent was upon a pier of defendant company extending for a mile

from the shore out into the sea, and he was near its extreme sea limit. It was controverted in the case whether he was a licensee or a trespasser upon the pier; however this may have been, he was killed by being crushed between two railroad cars. These cars had been left standing quite near each other upon a railroad track on the pier which passed within two or three feet of a house, called a hoist house, in which was located the machinery used in operating derricks and other appliances, in transferring freights from the cars to ships and from ships to the cars. The cars stood along side of the house and the opening between them was within fifteen feet of one of its doors. Nichols, the decedent, was in the house, and some of the witnesses thought "a little groggy." As an engine approached the cars for the purpose of moving them, he was seen to run sideways between the cars just about the time the engine came in contact with one of them, and was caught between the drawheads and fatally injured. After the injury and before his death decedent stated to several persons that he heard the engine coming but supposed he had time to run out of the house and pass safely between the cars before they would be reached by the engine, and attempted to do so.

Before the beginning of the trial the defendant demanded that the plaintiff be required to give security for costs, but the court below overruled the application and adjudged that the plaintiff had the right to proceed in the case without giving security for costs. After the trial had been entered upon and nearly all of plaintiff's evidence introduced, the plaintiff asked and obtained leave of the court to give the cost bond mentioned in the opinion of the court, which bond was given.

At the conclusion of the evidence the defendant asked for a peremptory instruction in its favor, but the court below refused it. Many instructions were then given for each of the parties. The jury returned a verdict for defendant and judgment thereon was accordingly rendered. The plaintiff's motion for a new trial was overruled, and he appealed to the supreme court.

· *Harper & Potter,* for appellant.

Captain Nichols was upon the pier by the express solicitation of an agent of the railroad company. He was not an employee of appellee, and did not have a contract with it at the time of his injuries, although his business upon the pier was with reference to obtaining employment.

The railroad company had a train of cars, without a locomotive attached, placed upon the hoist house track along by the side of the hoist house. This train was composed of two or three box cars that extended as far as the boiler room door, where there was an opening or passage way, and then came four or five flat cars. The proof was overwhelming that it was the custom of the company to leave this opening near the door in order that employees and others might pass through it into and from the hoist house. The testimony showed beyond question that a great number of persons, other than employees of the railroad company, from curiosity or otherwise, were constantly on the pier, and that they were in the habit of passing through the openng left between the cars. The only drinking water on the premises for the employees, and which was frequently partaken of by licensees, was in the hoist house, and it was shown conclusively that whoever, being out upon the pier, wanted a drink of water had to pass into the hoist house where drinking water was supplied from a pipe leading from an artesian well. The leaving of the opening between the cars was an invitation not only to employees but to all persons on the pier to cross through the narrow space left there for that purpose.

Every witness in the case, except Dalgreen and Ates, were employees of the railroad company. It was shown that Nichols was caught between the bumpers at the opening and that the opening was left for persons to use as a passage way. Of course the appellant made out a *prima facie* case of negligence, under Code of 1892, § 1808. This *prima facie* case being made out, it devolved upon the railroad company to exculpate itself from the charge of negligence by satisfactory and clear proof, but this

it failed to do.    On the other hand, considering the whole evidence, the negligence of the railroad company is manifest. The custom of leaving the opening as a passage way, upon all the testimony, remained unshaken.    It was impossible for the engineer or fireman, after seeing a person who might undertake to go through the opening from the hoist house to stop the train. In fact it was impossible for them to see the opening when a train came in on the track and in the manner which the one did on the occasion when Captain Nichols received his fatal injuries. It was negligent for the railroad company to leave this opening for a public pass way at such a place that those who were operating the train could not see it, and this negligence stood quite uncontradicted by any witness who testified in the case.

Besides, Davis, one of the brakemen of the train by which Nichols was killed, did not testify at all, and surely the railroad company cannot be held to have removed all presumption of negligence when it failed to introduce Davis and show that he performed his entire duty on the occasion in question; in fact it was the duty of Davis to run ahead of the moving cars and be on the lookout for persons about to go through the pass way, and to give warning of danger, but Davis did not tell us that he performed that duty, and the other employees of the defendant who undertook to swear about the occurrences but poorly accounted for Davis' conduct on the occasion in question.

The cases of *Railroad Co. v. Thompson,* 64 Miss., 558, and *Nichols v. Railroad Co.,* 85 Va., 99, are decidedly in point, and are both most favorable to the contention of the appellant.    In the *Thompson Case, supra,* the opening was usually from seven to ten feet wide, but on the day of Thompson's injury, it had been reduced to two or three feet, and the crossing or space left between the cars was not upon a public highway or crossing. In the *Virginia Case,* above cited, the party was injured while going to the station and undertaking to cross the track between cars that were only eighteen inches apart, and was caught and killed by the sudden backing of the train.    When he reached the

track he could not see the engine and had no notice that the cars were about to start. In both cases it was held that the plaintiffs were not guilty of contributory negligence in undertaking to pass between the cars when the space through which they attempted to go was so narrow. The only question in this case, or the only one that ought to have been submitted to the jury, was the one of Captain Nichol's contributory negligence.

It was undertaken to be shown that Nichols was intoxicated and to prove his contributory negligence by his statements after he received his injuries. All of his statements were flatly contradicted by the appellant's witness, Ates, the only witness in the case whose relationship to Captain Nichols was such as to make it at all reasonable that decedent would have disclosed the facts of the case within his knowledge to him if they were adverse. The jury had a right to disbelieve the witness Fairfield, whose testimony is contradicted by various other witnesses, and doubtless would have done so had not the court misled them by erroneous instructions.

The court below grievously erred, to the prejudice of appellant, in granting to appellee, its second, fourth, sixth, seventh, eighth, and twelfth instructions.

The second instruction given for defendant is in the teeth of the statute, Code of 1892, § 1808, which provides, that in all actions against railroad companies for damages to persons or property, proof of the injury inflicted by the running of locomotives or cars of such company shall be *prima facie* evidence of the want of reasonable care and skill on the part of the servants of the company in reference to such injury.

The second instruction tells the jury to find for the defendant unless plaintiff had satisfied them by a clear preponderance of the evidence that the defendant was guilty of negligence, and that by reason of such negligence Captain Nichols suffered the injury which resulted in his death.

The fourth instruction given for the defendant was erroneous because it states that the jury may put itself in the position of

the parties, without reference to the evidence, and for the further reason that under the evidence in the case, the question of decedent's negligence should not have been submitted to the jury, as the *prima facic* case gave appellant the right of recovery on this branch of the controversy since it was not overturned by any proof whatever.

The sixth and seventh instructions given for appellant are upon the weight and effect of the evidence, and violate Code 1892, § 732, which prohibits charges to the jury as to the weight of evidence. *Odeneal* v. *Henry,* 70 Miss., 172; *Jackson* v. *State,* 66 Miss., 89; *Meyer* v. *Blakemore,* 54 Miss., 570; 2 *Thompson on Trials,* § 2285; *French* v. *Sale,* 63 Miss., 386; *Kearney* v. *State,* 68 Miss., 233; *Railroad Co.* v. *Whitehead,* 71 Miss., 451; *Kimbrough* v. *Ragdale,* 69 Miss., 674; *Dunlap* v. *Hearn,* 37 Miss., 471.

The twelfth instruction given for the defendant is even more erroneous than all the others. It tells the jury that if in considering all the facts and circumstances of the case they are unable to say wherein the defendant was guilty of negligence, then they should find for defendant. This instruction is in violation of the statute, Code of 1892, § 1808.

The rule is that the presumption which proves negligence stands unless there be satisfactory proof to show that the defendant used due care and diligence under the circumstances of the case, and if the circumstances be inconclusive the statute applies. *Railroad Co.* v. *Phillips,* 64 Miss., 693.

The presumption stands and can only be overcome by proof showing due care to the satisfaction of the jury.

On the subject of the administrator's right to sue, we have to say that the statute must receive a reasonable construction. *Adams* v. *Railroad Co.,* 75 Miss., 275. No construction is ever to be adopted which charges the legislature with absurdity when any other reasonable view can be taken. Certainly the suit was well brought for all injuries suffered by Captain Nichols from the time he was hurt until his death. *Railroad Co.* v. *Phillips,*

64 Miss., 693; *Railroad Co.* v. *Pendergrass,* 69 Miss., 425; *McVey* v. *Railroad Co.,* 73 Miss., 487.

But if we be mistaken in all else the judgment rendered against the sureties on the cost bond is erroneous. The cost bond was a voluntary one, given after the court adjudged that it was not necessary for plaintiff to give security for costs. By the terms of the bond, the sureties bound themselves only to pay such costs as might be adjudged against Sylvester Nichols as an individual, and in this case the certificate of the court was obtained under the statute that there was probable cause for instituting the suit, and because of this certificate no judgment ought to have been rendered against the plaintiff as an individual, and certainly not against the sureties who were only bound by the terms of the bond for such costs as might be adjudged against their principal as an individual.

*McWillie & Thompson* and *E. J. Bowers,* for appellee.

No matter what this record may disclose, the judgment is proper and should be affirmed because an administrator cannot maintain such a suit. By the terms of the act (Chapter 65, Laws 1898) it is provided (section 1) "Executors or administrators shall not sue for damages for injuries causing death except as below provided." This is a negation, and unless an administrator is authorized to sue under the terms of the statute thereafter following, he cannot maintain such a suit as this at all.

Reading the balance of the statute following the negative language quoted above, the only words pertinent are, "If the deceased have neither husband or wife, or children, or father, or mother, or sister, or brother, then the damages shall go to the legal representative, subject to debts and general distribution, and the executor may sue for and recover such damages on the same terms as are prescribed for recovery by the next of kin in section 1 of this act."

Note now, executors or administrators are denied the right to

sue except as provided in the act itself. The act itself nowhere gives the administrator a right to sue, but gives that right only to the executor. Remember that actions for death were unknown to the common law and are purely statutory. Remember too that the statute being in derogation of the common law, must be strictly construed. *Alabama, etc., Railway Co.* v. *Williams*, 78 Miss., 209.

The legislature in its wisdom hath spoken and has negatived the right of executors or administrators to sue except "as below provided," and then proceeds to provide that an executor may sue in the state of case mentioned, but it has not provided that an administrator can maintain such a suit.

In the course of the trial plaintiff, through his counsel, asked leave of the court to give security for costs, and the court granted the permission, and the plaintiff gave a bond securing the costs.

Remember that the plaintiff proposed to give, and did give, security for costs. When we turn to the statute on the subject of costs (section 861) we find that security for costs, given at the institution of the suit, is security for the payment of all costs that may accrue in the action, and by § 862 of the code, security for costs given after suit begun is security for all costs accrued or to accrue in the suit, and by § 863, a mode of giving security for costs is provided.

It follows from these statutory provisions that whatever security is given, it is security for the costs. One who signs his name to an obligation to such a security is something more than a surety of the party primarily liable. We have another code section (§ 946) which is pertinent. By its provisions "any bond or undertaking of any kind executed in any legal proceeding for the performance of any public contract or for the faithful discharge of any duty shall inure to the person to whom it is designed by law as a security, and be subject to judgment in his favor, no matter to whom it is made payable, no matter what is its amount, nor how it is conditioned, and the persons

executing such bond or undertaking shall be bound thereon and thereby and shall be liable to judgment or decree on such bond or undertaking as if it were payable and conditioned in all respects as prescribed by law, if such bond or other obligation or undertaking had the effect in such proceeding or matter which a bond or other undertaking, payable and conditioned as prescribed by law, would have had; and where any such bond or undertaking is not for any specified sum, it shall bind the parties executing it for the full amount for which any bond or undertaking might have been required in the state of the case in which it was given."

We have a like provision, § 3076, Code 1892, applicable to official bonds. It makes no difference how the particular bond in this case may read. It was an obligation by every person who signed it as security for the costs which had accrued in the case at the time it was given and which might thereafter accrue. It will not do for the sureties on the bond to be permitted to say that their bond was not broad enough. It was an obligation executed in a legal proceeding for the faithful discharge of a duty, and whatever are its terms, the law itself fixes liability upon it in this case.

It cannot be argued successfully in the face of the decisions of this court that the judgment rendered in the case against the plaintiff himself was an improper one so far as concerns its form. But if wrong in this, the verdict should not be vacated, the judgment only should be amended touching costs.

It appeared very clearly in evidence that the decedent, Jack Nichols, was killed by being crushed between two cars of the defendant company at least three quarters of a mile out at sea. He was at the end of a very long and narrow pier which the defendant company had built out into the gulf. Whether Nichols was a mere trespasser on the company's property, or whether he went out there by invitation was a disputed fact in the case. That he was guilty of contributory negligence of the grossest kind is perfectly apparent from the evidence.

There was what is called a hoist house within two feet of a rairoad track, and Nichols was in this house.    Exactly what his purposes was in being there might be the subject of some con-. jecture from the evidence, but nevertheless he was in the house, and there were two railroad cars standing very close together, variously estimated by the witnesses as being separated from twelve inches to two feet, the one from the other.    There were two doors in the house, on its east side next to these railroad tracks.    There was ample space between these cars that were standing so near together and other cars so that there was no necessity for Nichols crowding his way through the narrow space between the two cars that were standing so close together. A locomotive and train of freight cars were out on the pier, engaged in doing some switching . The engine had been in the yards for sometime.    In fact it appeared that Nichols went out on the pier, either on the train or on the switch engine itself. Just before reaching the hoist house there was a prong in the pier and the tracks separated, one going down on the eastern prong of the pier, and the other track, following the western prong, was the one which passed so near to and on the east side of the house in which Nichols was seen just before his death. This engine had been down on the eastern prong of the pier doing some work with its head turned to the north, or to the shore.    It came back off of the eastern prong track with several freight cars attached to it and proceeded north until it had passed the point where the railroad tracks and the prongs of the pier separated, having two or three box cars attached.    Having brought the cars up to the north of the connection of the two tracks the engine proceeded, backing, with the box cars pre- ceding it, on to the track laid upon the western prong of the pier, which passed very near to the hoist house in which Nichols was.    The engineer backed the engine, with the cars ahead of him, down this western track, and in doing so came in contact with two or more box cars other than the cars between which Nichols was found.    In making these connections the usual and

ordinary amount of noise was made. The train backed on down slowly at a rate of three or four miles an hour, and just as it was about to strike the most northern of the two cars between which Nichols was found, Nichols came suddenly out of the door of the hoist house and ran along between the cars and the hoist house, a very narrow space, until he reached the narrow opening between the two cars by which he was crushed. Reaching that opening or a point opposite, he turned sideways and undertook to pass between the drawheads but failed to do so, and was crushed to death, or was so badly injured that he died shortly afterwards. These facts are undisputed. That Nichols could have heard the approach of the engine and cars is perfectly manifest; in fact it is almost certain that he did hear it. After he was injured he stated to a number of persons that he alone was to blame for the accident, that he thought he could get through the narrow opening, but was mistaken. This, in short, was the case, and there was no pretense but that the evidence was such as to justify a verdict for the defendant, even if we concede that an administrator can maintain such a suit at all.

The history of § 1808 of the Code is well known. Before its adoption an action of trespass against a railroad company had to be made out by a preponderance of the evidence showing not only the infliction of the injury but showing negligence on the part of the company. This was a very great hardship in a certain class of cases. It was a very great hardship on the man whose cow was killed on the railroad track at night, the only witnesses to the occurrence being the engineer and fireman of the train. In fact the killing of cattle, and the need of the law applicable to the suits for their killing, had more to do with bringing § 1808 of the Code into our law than anything else, if it were not the sole cause of its coming into existence. It has been decided that presumption should yield to facts where they are sufficiently shown. *Vicksburg Railroad Co.* v. *Phillips,* 64 Miss., 693; *New Orleans, etc., Railroad Co.* v. *Bour-*

*geois,* 66 Miss., 3; *Bedford* v. *Louisville, etc., Railroad Co.,* 65 Miss., 385; *Hamlin* v. *Yazoo, etc., Railroad Co.,* 72 Miss., 39. In the first case cited, *Vicksburg, etc., Railroad Co.* v. *Phillips,* this court said, speaking through Chief Justice Campbell: "It is proper for the court, at the instance of the defendant, to instruct the jury that when the circumstances accompanying the infliction of injury by the running of locomotive or cars are in evidence before them, it is to decide the question of skill and care in reference to the injury from those circumstances." Presumption must yield to facts where they are all known.

In the second case cited, *New Orleans, etc., Railroad Co.* v. *Bourgeois,* this court, speaking through Chief Justice Arnold said: "It (the *prima facie* case under the statute) may be rebutted and overcome, and the railroad company may acquit itself of negligence in the matter if it can. And when the circumstances attending the injury are shown by the evidence, the case must then be determined by the jury, on the facts proved, and not upon any presumption of negligence created by the statute. *Vicksburg, etc., Railroad Co.* v. *Phillips,* 64 Miss., 693.

And in the case of *Hamlin* v. *Yazoo, etc., Railroad Co.,* above cited, it is said, speaking of section 1808 that "The whole effect of the statute is to devolve upon the defendant the burden of proof of due care; it is not required to carry this burden, with the presumption of negligence again added as a rider."

The evidence in this case shows conclusively that Jack Nichols was guilty of contributory negligence which caused his death, and the judgment ought to be affirmed even if ingenious counsel have pointed out objections to the instructions, though we feel confident the instructions were not erroneous to the prejudice of appellee. The defendant was entitled to peremptory instruction because of such contributory negligence.

Argued orally by *W. H. Potter* and *W. R. Harper,* for appellant; and by *R. H. Thompson,* for appellee.

TRULY, J., delivered the opinion of the court.

It is not necessary to examine or discuss in detail the numerous instructions given for the appellee by the court below, nor the many objections urged by appellant thereto. Under any view of the facts of this case, as developed by the record, the right result was reached and the verdict must be approved. Granting that there was error in the instructions for appellee, this cannot avail the appellant, because no other verdict could rightfully be sustained.

This is not a case in which the statutory presumption of negligence can be invoked. (See numerous cases cited in brief for appellee.) Where all the circumstances connected with an injury resulting from the running of a railroad train are in evidence, this removes all necessity for resorting to legal presumption, because the presumption must always give way to proof. In this case all the circumstances attending upon the accident are in proof by the testimony of eye witnesses; and from that proof it is indisputable that the tragic event was the result of appellants intestate's own recklessness, and this conclusion is borne out by his own story, repeatedly told, after the event.

To state the case most strongly for the intestate of appellant, he was a licensee, and, as such, charged with the duty of using ordinary care to avoid injury. Being familiar with the operation of the railroad trains upon the pier where the accident happened, he should not have recklessly disregarded the information which he possessed and voluntarily placed himself in a position of obvious danger, as his own statement shows that he did. A licensee cannot cast prudence to the winds and rely on the care of others to watch over and protect him. This is a more glaring case of contributory negligence on the part of a licensee than is the case of *Murdock* v. *Railroad,* 77 Miss., 487, and in that case it was held that the peremptory instruction for the railroad was correctly given. (See also *Railroad Co.* v. *Lee,* 71 Miss., 895; *Railroad Co.* v. *Arnola,* 78 Miss.,

787.) The peremptory instruction in this case asked for by defendant of the court below should have been granted. Unless the doctrine of contributory negligence is to be abolished entirely, this verdict must be approved.

During the progress of the trial, without legal obligation upon them, and after the decision of the court below in their favor, upon this point, appellant, Sylvester Nichols, individually, but not as administrator, gave a bond with two sureties to secure the costs of the proceeding. Upon the rendition of verdict in favor of defendant, counsel for appellant, as provided by § 881, Code 1892, asked and obtained a certificate from the court that there was probable cause for the bringing of this suit; but, notwithstanding the granting of this certificate, judgment was rendered against the sureties on said cost bond for the costs incurred. In this the trial court erred. Section 946, Code 1892, refers to bonds required by operation of law to be executed in any legal proceedings will not permit the obligors to plead any irregularity or defect in form, or the manner of execution. That section has no application to the instant case. This was a bond, not required by law, but voluntarily given by the obligors, in a legal proceeding, and being voluntarily given, the sureties had the power to limit their liability as they might desire; and they did limit their liability as shown by the terms of the obligation, to a suretyship for any costs that might be awarded against Sylvester Nichols individually. The condition of this bond was never broken, no costs having been legally adjudged against Nichols, individually, and the sureties bound themselves only to that extent. As no costs could be legally assessed against Nichols after the granting of the certificate aforesaid, it necessarily follows that no judgment for costs could be legally entered against his sureties. Therefore, while the verdict of the jury is approved and the judgment in favor of the Gulf & Ship Island Railroad Company affirmed, the judgment against the sureties on the cost bond is hereby set aside and vacated.

*Judgment amended and affirmed.*