HARPER MOREHEAD *v.* YAZOO & ·MISSISSIPPI VALLEY RAIL-
ROAD COMPANY.

1. RAILROADS. *Custom. Contributory negligence.*

The custom of a certain train to use the main line of a track at
a station does not deny it the right to use a side track, or ex-
cuse any person walking on the side track when such train is
approaching, for a failure to exercise ordinary care.

2. SAME. *Station agent. Walking on track. Assumption of risks.*

A station agent assumes the risk incident to his acts when he
goes upon a side track, rather than the space provided for
pedestrians between such track and the main line, while walk-
ing to the point where he transacts business with trains.

3. SAME. *Engineer. Man on track. Presumption.*

The engineer of a railroad train has the right to assume that a
man seen on the track, at a place where there is no difficulty
in leaving it, will exercise the common instinct of self-preserva-
tion and get off the track before he is reached by the train.
*Railroad* v. *Stroud,* 64 Miss., 784, and *Christian* v. *Railroad,* 71
Miss., 237, approved.

FROM the circuit court of Claiborne county.

HON. GEORGE ANDERSON, Judge.

Morehead, appellant, was plaintiff, and the railroad company,
appellee, defendant in the court below. From a judgment in
defendant's favor the appellant appealed to the supreme court.

Appellant had been station agent at Ingleside for sixteen
years. The depot there was on the east side of the railroad
track. There was a side track on the east side of the main line,
and next to the depot. The space between the two tracks is
nine feet wide, and level, and was used by pedestrians. Appel-
lant was injured by being struck by a passenger train going
south on the morning of April 23, 1902. The testimony showed
that plaintiff had been in the habit of walking down the center
of the side track for some distance south to a point where the

baggage cars of southbound passing trains stop in order to get the mail and express; that passenger trains usually and nearly always kept the main track, and that the rules of the company required all work trains and irregular trains to give the right of way to the regular passenger trains.   On the morning of the accident, plaintiff was sitting in the depot writing, and expecting the southbound passenger train.   He heard the train whistle, and at once started to go down the center of the side track, to the place where it was his custom to go in order to transact his regular business with the trains.   The passenger train, instead of going down the main line, as was usual, took the side track, because there was a work train on the main line, and just as plaintiff reached the point he expected to stop, the train overtook him and struck him, fracturing his spine and causing paralysis of the lower limbs.   Plaintiff did not look north at all; he was accustomed to that train coming on the main line, and not on the side track; he did not have to go the way he did, but it was the most convenient way; he had no notice that the train would come in on the side track, and did not know that there was a work train on the main line; took it for granted that the passenger train was on the main line; was relying on the rules of the company, requiring other trains to give the main line to the regular passenger trains.   Plaintiff's brother was walking just behind him, and got out of the way of the train, and was not injured.   Plaintiff could easily have seen the train in time to have gotten out of the way if he had looked up. Plaintiff's evidence, when he rested his case, was excluded, and a peremptory instruction granted by the court to find for defendant.   To this action of the court plaintiff excepted, contending that it was the invariable custom of the defendant company, continued through many years, to bring in its southbound passenger trains on the main line, and that it was the rule of the company to require other trains to give the right of way to passenger trains, and that it was negligence on the part of the railroad company to bring the train on the side track on the

morning of the accident without sending a flagman ahead to give warning; and that, notwithstanding the carelessness, inattention, and negligence of the plaintiff at the time of the injury, still his position on the track was one of danger and peril, which was easily apparent to. the engineer, who failed to use reasonable care to avoid the injury.

*J. McC. Martin,* and *McLaurin, Armistead & Brien,* for appellant.

In their relations to others, respecting the degree of care required of them to prevent injuries, the courts lay down the following rules, to wit:

1. As to trespassers, they owe no duty, unless their peril be seen, then they should use all reasonable effort to prevent injury. Having done this, then they are blameless. *Railroad Co.* v. *Watley,* 69 Miss., 145.

2. As to trespassers when the engineer is made aware of their peril, and he willfully, wantonly and recklessly hurts them, then the company is liable. *Railway Co.* v. *Williams,* 69 Miss., 631.

3. As to licensees. They owe the duty of ordinary care; and should injury result in the absence of ordinary care they. are liable. *Law* v. *Mo., Kan. & Tex. Ry.,* 20 Railroad Rep., 588 (s. c., 67 S. W. Rep., 1028).

The Arnola case, 78 Miss., 787, does not contravene the above rule. Arnola was not a licensee, because no inducements had been held out by the company to her or the public to use the pass way at Crystal Springs, over the company's lot. Hence, in that case the rule as announced by the court: "A person who, without the invitation of the owner, goes upon the land or premises of such owner, takes such permission with all the dangers attending it." Had she been there as a licensee, by the invitation of the company, the rule would clearly be as first above stated. Such, also, is the case of *Dooley* v. *R. R. Co.,* 69 .Miss., 648. In that case, the court says: "It is the plain case

of an inattentive person using the track of a railway, where he had no right to be, and where the company had a right to expect an unobstructed way at all times, and in such manner as to absolve others from all liability from any injury, short of willful and wanton injury, that may occur."

In the case of *Bell* v. *Southern Ry. Co.,* 30 So. Rep., 821, a Mississippi case, not reported in the Mississippi Reports, the facts developed and the rule applied were as follows: "The plaintiff was unloading coal from defendant's car on its side track, placed there for that purpose. After satisfying himself that no engine was attached, plantiff backed up his wagon, and while so doing his team became frightened and he stepped in front of them. At that moment he heard the engine hit the train, and the coal car struck the wagon, frightening the team so that they ran over plaintiff. He could not see the engine before the collision and received no warning from the defendant's servants." Held, "As the plaintiff was at the car, on the implied invitation of the defendant, defendant's negligence and plaintiff's contributory negligence were questions for the jury."

4. As to persons on track or premises by invitation. Of this class are passengers, and others, using crossings prepared by the company for public convenience. The case of *Railway Co.* v. *Hirsch,* 69 Miss., 132, is of this character. Says the court: "Where a railroad company so locates its station as to require persons approaching it from the main business portion of the town, to cross several tracks which are kept smooth for pedestrians and without any well defined crossings, this is tantamount to an invitation to such persons to cross at any point near the station, and persons so crossing are not trespassers. And under such circumstances the company will be held to the utmost caution in the movement of its trains on such tracks to prevent injury to persons so crossing."

The case of *Railroad Co.* v. *Turner,* 71 Miss., 404-406, is to the same effect. Plaintiff was carrying away his purchases

from a trading car, where it had been placed by the company, and to which the public resorted. ·

5. As to employes and persons charged with fixed duties. The rule is the same as that for persons on track or at stations by invitation. Their obligations to the employer requires that their attention should be engrossed in the performance of duty. Hence, their minds and attention, being engrossed in performance of the duty, they have not the same opportunities and freedom to look out for danger as a licensee, or passenger. The courts recognize this and require from the employer a higher degree of care to avoid injuring such employes.

In the case of *Bullard* v. *Southern Ry. Co.,* 6 Railroad Rep., 609, a Georgia case (43 S. E. Rep., 41), the doctrine is announced: "Railroad engineers should observe more caution in running at places where they know persons are likely to be ꞌon the track than elsewhere, even if those persons are trespassers, and especially is this true when the company has at least tacitly consented to this otherwise unauthorized use of its property by the public."

In the case of *Ala. Great Southern R. R. Co.* v. *Brooks,* 6 Railroad Rep., 375 (33 So. Rep., 181), the rule is stated: "Employes do not assume risks created by the employer's negligence." Again, in the case of *Boggero* v. *South. Ry. Co.,* 4 Railroad Rep., 386 (41 S. E. Rep., 819): "A railroad company owes a greater duty to one on the railroad track with its consent or permission." So, in the case of *Klien* v. *Jewett,* 5 Neg. Cases, 1: "The plaintiff, in attempting to pass from the depot to the cars, in the absence of warning, has a right to regard himself in a place of safety, where he had a right to give his whole attention to the business he had in hand, and was not bound to look out for extraordinary dangers occasioned by negligence of persons in charge of the road."

Employes on track—in general. "The general rule is that, as to persons lawfully upon the track engaged in labor, the railroad company owes a duty of active vigilance, and such

persons have a right to become engrossed in their labor to such an extent that they may be oblivious to the approach of trains—relying, as they may, upon the duty imposed by law with reference to them." See notes admirably digested, in vol. 4, New Series Am. & Eng. R. E. Cases, p. 542.

"Where workmen are placed upon the track by a railroad company to do work, the company must be as to them actively vigilant. Such persons have a right to become engrossed in their employment and to expect that care and pains will be taken as to them." (See same notes last above cited.)

"Where a railroad employe, engaged in moving ashes, etc., from a side track in depot grounds, was injured by a train set off upon said track, held that he had a right to act upon the belief that such train would be operated and run through the grounds as other trains had been uniformly operated and run there." *Schultz* v. *Chicago, etc., R. R. Co.,* 44 Wis., 638.

"The fact that the deceased, when he engaged in the company's service, assumed the risk of injuries from the negligence of his co-employes, did not relieve the engineer of the duty of looking out for and avoiding injury to deceased." *Schlereth* v. *Missouri Pac. R. R. Co.,* 115 Mo., 87; *Erickson* v. *St. Paul, etc., R. R. Co.,* 41 Minn., 500.

"A master is as responsible for injuries caused by his negligence in not informing his servants of danger known to him, and not known by the servant, as he is for injuries caused by the personal negligence of the servant." *Mitchell* v. *Boston, etc., R. Co.* (N. H.), 34 Atl. Rep., 674.

Upon the question of usage and custom. In the case of *Pier* v. *Chicago, M. & St. P. R. Co.,* 5 Am & Eng. R. R. Cases, 412 (94 Wis., 364, 365), the court says: "The custom which plaintiff attempted to prove was simply a customary way of doing certain things prevailing in the switch yard, which, if proven, would be a fact proper to be considered in connection with the other surrounding facts in judging of the conduct of defendant and the plaintiff."

"Persons lawfully at work in repairing a railway track, cannot be expected to pursue their labors and at the same time maintain a constant lookout for an approaching train. They are passive and not a source of danger to the train. Those who are driving the train are active, and are handling and are in control of the instrument of danger and mischief. The obligation of reasonable care which the law puts upon the railway company under these circumstances therefore demands nothing less than an active vigilance in favor of persons thus lawfully at work, and the giving of reasonable danger signals to arouse their attention and enable them to get out of the way before it is too late." 2 Thompson's Neg., sec. 1859.

"In secs. 1840-1842, *Ib.,* it is shown that the same rule applies in favor of the servants of a contractor, or persons engaged in loading or unloading cars, or receiving mail or express matter."

In the case of *Louisville & N. R. R. Co.* v. *Lowe,* 1 R. R. R., 364-370 (66 S. W. Rep., 736), "Lowe was an assistant inspector of cars for defendant. He had just finished inspecting one train and was on his way to a tool house, where his duties next called him. The train he had just inspected was pulling out on another track. He walked alongside of the pulling out train, and finally stepped onto the main track. While he was walking southward on the main track, towards the tool house, his next place of duty, an engine and tender ran upon him from behind. Says the court: 'The appellee was in the discharge of his duties in going from the inspection of the train to the tool house, and was at a place where the presence of persons on the track might be anticipated. While he was not at work on the track, he was at work for defendant, and was lawfully on the track in the course of his employment, and is as much within the principle of the rule as if laboring on the track. Whether he was guilty of contributory negligence was a question for the jury, and it was, also, properly submitted to the jury whether, notwithstanding his negli-

gence, those in charge of the train, after they perceived his danger, or should have perceived it by the exercise of ordinary care, might not have avoided the injury to him.' "

"In the case of *R. R. Co.* v. *Mahan* (Ky.) 34 S. W., 16, Mahan was the telegraph operator, and received orders to stop an extra train. It disregarded his signal to stop, and he, seeing that a collision was inevitable with a passenger train coming in the opposite direction, unless the order to stop was obeyed, seized a lantern and followed the train, waving his light. It stopped and the conductor came back to him. The extra then backed in off the main track to get out of the way of the approaching passenger train, and they, also, got off the main track to let that train pass. In doing this they got on the side track, and while standing there, the train which he had stopped continued backing down on the side track without any lookout or signal of its approach, and ran over him. Says the court: 'If in the emergency which seemed to confront him, the appellee got on the side track or too close to it, when there was space elsewhere within which to stand or walk and give his signals to the approaching train, he was, perhaps, guilty of negligence, but for which the injury would not have occurred. Yet it is manifest that by the exercise of ordinary care on the part of those controlling a backing train the danger could have been discovered and the danger averted. The necessary care was not exercised on this occasion, and the failure to exercise it was gross negligence.' "

From the foregoing citations it is clear that appellee was not entitled to a peremptory instruction in the case at bar, and that the evidence for plaintiff showed a line of facts such as entitled him to go to the jury. Appellee had established a particular method of dealing at Ingleside. It had knowledge of appellant's manner and practice of approaching its southbound passenger train. Besides it used well-ascertained rules for managing the trains at that point. For sixteen years its train southbound, due there at 8:15 A. M., had passed on the main line ex-

clusively, and never on the side track. Thus usage and custom had created a condition of things well known to the engineer, fireman and superintendent of appellee. Upon this condition of things appellant relied implicitly. *Betts* v. *Lehigh, etc., R. R. Co.* (Penn.) 6 Am. Neg. Rep., 393 (s. c., 191 Pa. St., 577); *Chicago, etc., R. R. Co.* v. *Kelly,* 182 Ill., 269 (s. c., 6 Am. Neg. Rep., 489).

*Mayes & Longstreet,* and *J. M. Dickinson,* for appellee.

It was in no sense negligence on the part of the company to bring in its trains on a side track whenever the exigencies of its business demanded such use. Side tracks are the property of the railroad companies, and built for their uses as much so as the main lines. They are used at stations for passing trains, for switching purposes, for unloading tracks. Plaintiff admits such uses and knowledge of them. There is no statute of the state which forbids any proper use of side tracks, or which attempts any regulation of such use. There is no rule of the company whch prohibits the use of such tracks whenever the business of the company requires them to be used.

The mere fact that a railroad company has not used a certain portion of its track at a certain hour for the passing in a certain direction of a certain character of train, cannot be held to bar the company on any idea of non-user, abandonment or prescription, when the particular track remains throughout the whole period the property of the company, as a part of its necessary equipment in constant use, and open at any moment of the time to any use for any train which the business exigencies or conveniences of the company may render proper. *Hackney* v. *R. R.* 33 So. Rep., 723.

In view of the great emphasis laid by plaintiff in his testimony and by his attorneys upon the supposed rights of precedence and priority between trains termed "superior" and those termed "inferior," we desire to say that the regulations do not by any fair construction declare as a rule which may not be

varied or departed from, that superior trains shall always use and remain on the main line, and that inferior shall invariably go to side tracks.     Plaintiff refers in his testimony, time and again, and learned attorneys in their briefs treat, the rule in regard to the passing of superior and inferior trains as if it were an invariable, inviolable imperative, inflexible regulation—the very breach of which was negligence.

But such a contention is not supported by an inspection of the rules themselves.     There was no breach of duty, rule or custom on the part of the railroad or of the employes in charge of its train, growing out of the use of the side track by the passenger train under the circumstances shown by the testimony.

The use of its side track being lawful and proper, it was not negligence to so use it, and there was no rule or necessity which required extraordinary warnings or precautions.     The train entered the station under full control; the bell was ringing and giving warnings; the speed (which plaintiff asserts "was at high rate"), the proof shows was about ten miles an hour, and there was no dangerous rushing into the station, but a moderate and prudent progress, with such a slowing down that the engine came to a dead stop seventy-one feet south of the southwest corner of the station, and less than fifty feet from the point where plaintiff was struck.

Plaintiff was "bound to the use of his senses, and could not, whilst plainly discarding their use, recover on the ground that appellant had violated its rule (or custom), such violation not being willful, but merely negligent."     *Railroad* v. *Crockett,* 78 Miss., 412.

In this connection we call the attention of the court to the facts and to the opinion in the case of *Hackney* v. *Railroad Co.,* Miss., 1903 (33 So. Rep., 723), where the plaintiff attempting to cross a spur track, little used by the railroad company, and where he had no special reason to expect a train, was struck by a train and killed:

"He never stopped to look for a train, for if he had done

. so, he must have seen the train plainly approaching him from his left and rear. The company was negligent in not keeping a lookout where deceased was killed, but deceased was guilty of contributory negligence that bars a recovery."

The plea of contributory negligence is not answered by show-ing failure of duty on the part of the railroad company. That defense itself assumes the existence of negligence on the part of the injured person. *R. R. Co.* v. *Webb,* 90 Ala., 185; *Sala* v. *R. R. Co.,* 85 Iowa, 678; *Freeman* v. *R. R. Co.,* 74 Mich., 86; *Duncan* v. *R. R. Co.,* 46 Mo. App., 198; *R. R. Co.* v. *Mathis,* 50 Ind., 65; *Bridge Co.* v. *Sanson,* 91 Ala., 560; *Tay-lor* v. *R. R. Co.,* 86 Mo., 457.

The second proposition advanced by plaintiff to save him-self from the effects of his own gross carelessness and inatten-tion, is, that his position at the time he was injured was one of peril apparent to the engineer, who did not then use reasonable effort to avoid striking him. Plaintiff was not in a place of peril apparent to engineer or fireman. The court will remem-ber that the evidence showed that Ingleside is only a wayside stop, where the total number of passengers for all trains do not exceed fifty or sixty persons per month. So far as the evidence discloses, it was little more than a plantation stop, with one store, and that on the morning of the injury there were few persons around the station, and no persons intending to become passengers. There was no reason why the engineer should have anticipated a crowd at such point, and it is apparent from the evidence that only three or four persons, and they, with one exception, employes, were at the point at the time. How-ever this may have been, the fact still appears that the engineer had his train under perfect control, and was going into the sta-tion at a slow rate of speed, and did, in fact, bring the train to a dead stop seventy-one feet from the southwest corner of the station.

The rule imposing an obligation upon the employes in cases of "discovered peril" is clearly stated by our court in the cases

of *Christian* v. *Illinois, etc., R. R. Co.,* 71 Miss., 240, and *Mobile, etc., R. R. Co.* v. *Stroud,* 64 Miss., 784.

Argued orrally by *J. McC. Martin, for appellant,* and by *Jas. C. Longstreet,* for appellee.

TRULY, J., delivered the opinion of the court.

None of the principles of law relied upon by appellant are applicable to the case made by this record. Conceding all for which he contends, a verdict in his favor could not rightfully be sustained.

The existence of a custom of certain trains to use the main line on all occasions, even if fully proven, would not excuse any one, whether trespasser, licensee, or employe, from the exercise of ordinary care and prudence on his part. See *Hackney* v. *Railroad* (Miss.) 33 So. Rep., 723; *Railroad* v. *Crockett,* 78 Miss., 412 (29 So. Rep., 162); *Railroad* v. *Arnola,* 78 Miss., 787 (29 So. Rep., 768; 84 Am. St. Rep., 645).

It cannot be said that appellant was injured by reason of any failure on the part of the master to provide a safe place for the performance of his duties, for the reason that appellant was not at the place where his duty called him. For his own convenience, and to save himself the trouble of a few more steps, he chose to walk upon the edge of the track, rather than in the place of safety provided by the company between the main line and the spur track, where, according to the evidence, there was ample room for him to stand in perfect safety while discharging his duties at the express car. One who, from motives of convenience and from personal choice, chooses the roadbed of a railroad to walk on, when not called there by any imperative duty, assumes all the risks which his own imprudence and lack of caution entail, and, if injured thereby, cannot recover. *Murdock* v. *Railroad,* 77 Miss., 487 (29 So. Rep., 25); *Railroad Co.* v. *Jones* (Miss.), 35 So. Rep., 193.

Under the facts of this case, the engineer was charged with no duty other than the exercise of ordinary care, even after he

discovered appellant on the track. *Railroad* v. *Arnola, supra; Railroad* v. *Stroud,* 64 Miss., 784 (2 So. Rep., 171). The case of *Christian* v. *I. C. R. R.,* 71 Miss., 237 (15 So. Rep., 21), states the rule of the duty of the engineer discovering a person on the track clearly and fully. It was there held that if the engineer saw the person, and it was apparent, or ought to have been apparent, to the engineer that the position occupied by such person was one of peril, and one from which he could not by reasonable action extricate himself, or that the person was unaware of his position of peril, then it was the duty of the engineer to exercise reasonable care to prevent injury. The case at bar does not measure up to any of the requirements of the rule stated by that case. Appellant was not apparently in a place of peril. There was no *cul-de-sac.* He was walking on a level track, where a single step to either side would have removed him from all danger, as it did his brother, who was walking near him. The engineer had no reason to believe that he was in a place of danger. He had a right to assume that appellant was aware of the approach of the train, and was perfectly familiar with the surroundings; that the performance of his duty did not necessarily call him where he then was; and that he was on his way then to meet and transact business with the train when it should come to a stop. Under these circumstances, there was no duty incumbent upon the engineer which the record does not show he fully discharged. Appellant's sad case is but another of a long line where persons, growing careless through familiarity, cease to regard with proper care the imminent danger always attendant upon the use of the roadbed of a railroad as a thoroughfare, and neglect to make proper use of the physical faculties with which they are by nature endowed.                                    *Affirmed.*