### ILLINOIS CENTRAL RAILROAD CO. *v.* ELIZABETH A. McLEOD ET AL.

1. NEGLIGENCE. *Contributory negligence. Passenger in carriage. Driver.*

   One being driven in a carriage by another cannot recover for damages received because of the negligence of a third party, where the palpable negligence of the driver contributed to the injury, and the party injured was himself guilty of negligence in not taking action to check the driver or remonstrate with him, having opportunity to do so and the danger being apparent.

2. SAME. *Railroads. Crossings.*

   A lack of ordinary care by a person who is injured by a collision with a railroad train at a crossing, will prevent his recovery from the railroad company, although the engineer was negligent in not sounding an alarm for the crossing.

FROM the circuit court, second district, of Yalobusha county. HON. Z. M. STEPHENS, Judge.

Mrs. McLeod, the widow, and Alexander R. McLeod, the son of Rufus McLeod, deceased, the appellees, were the plaintiffs in the court below; the railroad company was defendant there. The suit was for the death of Rufus McLeod. From a judgment for $4,000 in plaintiffs' favor, the defendant appealed to the supreme court. The opinion of the court fully states the facts.

*Mayes & Harris* and *J. M. Dickinson,* for appellant.

At the outset of this discussion, we wish it clearly understood that we are not contending in this case for the rule laid down

in *Thorogood* v. *Bryan*, 8 C. B., 115.   We recognize the fact
that the rule, as laid down in that case, has been generally de-
nied by the courts of last resort in the United States, although
there are cases to be found which approve it.   See *Prideaux* v.
*Mineral Point*, 43 Wis., 513; *Houfe* v. *Fulton*, 29 Wis., 296;
*Artz* v. *Chicago R. R. Co.*, 34 Iowa, 153; *Slater* v. *Railroad
Co.*, 71 Iowa, 209; *Lake Shore* v. *Miller*, 25 Mich., 236.

The case which we think clearly announces the true rule, and
the one which we think is applicable to this case, is the case of
*Little* v. *Hackett*, 116 U. S., 366.   At page 379 the court says:
"There is no distinction in principle, whether the passenger be
on a public conveyance like a railway train or an omnibus, or be
on a hack hired from a public stand in a street from a driver.
Those on a hack do not become responsible for the negligence
of the driver if they exercise no control over him further than
to indicate the route they wish to travel and the place they
wish to go.   If he is their agent so that his negligence can be
imputed to them to prevent their recovery against the third
party, he must be their agent in all other respects so far as the
management of the carriage is concerned, and responsibility to
third parties would attach to them for injuries caused by his
negligence in the course of his employment.   But as we have
already stated, responsibility, cannot, within the recognized
rules of law, be fastened upon one who was in no way inter-
fered with and controlled in the matter causing the injury.
From the simple fact of hiring the carriage or riding in it, no
such liability can arise.   The parties hiring or riding must in
some way have co-operated in producing the injury complained
of before he incurs any liability for it."

The rule as laid down in Elliott on Railroads, vol. 3, par.
1174, is as follows: "The general rule is that the negligence
of a driver of a vehicle with whom the injured party is riding
will not be imputed to such injured person.   But where per-
sons riding in a vehicle all take part in managing it and the
team drawing it, there is reason for holding that all are bound

to exercise ordinary care to avoid collisions with railroad trains. Where the driver is the agent or servant of the injured person, it is held that the negligence of the former is attributable to the latter. It is obvious that where the negligence of the person who receives the injury contributes to the injury, he cannot escape the consequences of his own carelessness. Thus where one person riding with another saw the headlight of an approaching engine, it was held that he was guilty of contributory negligence in failing to warn the driver of the vehicle in which he was riding. If the person riding in the vehicle knows the driver is negligent, and he takes no precaution to guard against injury, he cannot recover for injury in such case. The negligence is his own and not simply that of the driver.''

The author cites in support of the text the following cases, all of which we have examined, and they fully support the text: *Dean* v. *R. R. Co.*, 39 Pa. St., 514; *Smith* v. *R. R. Co.*, 87 Me., 339; *Brickell* v. *R. R. Co.*, 120 N. Y., 290; *Miller* v. *R. R. Co.*, 129 Ind., 97; *Hoag* v. *R. R. Co.*, 111 N. Y., 199; *R. R. Co.* v. *Howard*, 124 Ind., 280; *Township* v. *Anderson*, 114 Pa. St., 643.

The rule seems to be well settled that a party riding in a hired conveyance with full knowledge of his surroundings, with opportunity to protect himself, must take precautions to do so, and he is not relieved of the ordinary rule applying to persons approaching railroad crossings simply by the fact that he is riding in a hired conveyance. He must do nothing which would interfere with the conduct of the driver, and it is his duty to interpose and save himself, if he sees or has reason to know that he is going into a place of danger, and he must look out for himself where he can and where the opportunities for knowing and appreciating the situation are as much with him as with the driver of the vehicle.

*Alabama, etc., Ry. Co.* v. *Davis*, 69 Miss., 444, is a case in which this court elaborately discusses the question as to whether the injured party who was being driven in the buggy was her-

self guilty of negligence. The court held that she had done all that could be reasonably required of her under the circumstances. At the same time the court recognized the fact that a party cannot quietly remain in a vehicle and close his eyes to surrounding danger and recover for an injury simply because he was being driven by another.

The rule as to the duty of persons approaching a railroad crossing has been repeatedly announced by this court and is settled beyond any controversy, and, tested by these rules, there can be no question as to the negligence of both the driver and of the deceased in the case at bar. In fact, under the circumstances as shown by the record in this case, the deceased was the most reprehensible of the two. Not only did he fail to discharge the duty which was incumbent upon him to look and listen for approaching trains, but he actually interfered with and prevented the driver from the discharge of this duty for him, if he could impose the duty upon the driver. *Murdock* v. *Yazoo, etc., R. R. Co.*, 77 Miss., 487; *Jobe* v. *Memphis, etc., R. R. Co.*, 71 Miss., 734; *Winterton* v. *Illinois, etc., R. R. Co.*, 73 Miss., 831; 1 Thompson on Neg., 326.

*Monroe McClurg*, for appellee.

It is not contended on the part of the appellant that the negligence of the driver is to be attributed to the deceased, except in so far as the deceased may have materially interfered with him in the discharge of his duties. Then, so far as the conduct of the driver is concerned, it must be pruned out of the record and lost sight of entirely unless it be shown that McLeod interfered with him to a degree exceeding reasonable care and prudence, and of course the burden is upon the appellant to establish this fact. But two matters are alleged as constituting this unreasonable interference, to wit, that McLeod gave the driver three drinks of whisky and that he was in conversation with him and diverting his attention from his duties at the

crucial moment.    Failing to establish either of these proposi-
tions, the negligence of the driver necessarily is unimportant.

It is perfectly in accord with good reason so say that Mc-
Leod believed all the way along the three hundred yards
traveled that the driver knew his business and would take all
necessary precautions against a collision with the train; that
he believed at "the turn" he would stop, and found when it
was too late that he could do nothing to save himself; that
he believed that the team was not afraid of a moving train; that,
like all other men, he knew many teams of the character of this
one would go up near a moving train and stand quietly until it
passed, and it is not improbable but that this one would have
done so but for the unnecessary blast of the whistle within
thirty feet of it, if not "right at the crossing" or "right on
the crossing."   He had a right to believe each and all of these
things, and it must be presumed that he did believe something
to this effect and do all things else that might be expected of a
reasonably prudent man under similar circumstances to save
himself from injury, until the testimony becomes strong enough
to overcome such presumption.

In addition to this presumption of law, which it is respect-
fully submitted has not been overcome by the evidence, and
which must be overcome before it avails the appellant any-
thing, it is submitted that, if placed on even ground with ap-
pellant upon this proposition, the facts developed by the record
would carry the balance in favor of the appellee.

The testimony as to blowing of whistle, as required by law,
300 yards south of the crossing is absolutely unanimous in the
negative, it being positively stated by the engineer himself,
that he did not sound it.


*Brewer & Wilson,* on same side.

Railroads should know that human life must be regarded as
of more importance than a freight schedule or a time table.

The jury has settled, on a preponderance of evidence, that

the bell was not rung and that the whistle did not blow until
the crossing was reached or passed.   The approach of the train
was, therefore, unwarned.   It was a cold, windy morning.
The wind was hard from the north.   The driver and McLeod
had their backs to the train and were in an open wagon or hack.
McLeod had only been over this crossing once before, in the
daylight, and was unfamiliar with the locality.   McLeod exer-
cised no control over the driver and trusted to him; as he had
a right to do.   30 L. R. A., 684.   Whether the driver exer-
cised care or not in no way affects McLeod.   The question of
McLeod's negligence was left to the jury, and they decided that
he acted as an ordinarily prudent man would have done.

The engineer, who approached the crossing from the south,
saw these people, on the cold morning, with the wind blowing
ahead of him, with their backs to the train, traveling in this
open wagon, when his train was a mile from the crossing and
400 yards behind them.   He knew the wind was blowing; he
knew the road led to the crossing; he knew there was no other
outlet; he knew their backs were to him; he knew that they
would reach the crossing about the time he did; he knew he
was not having the bell rung or the whistle blown; he knew
their peril.   He says so, and, with all this, he neither made
effort to stop nor did he whistle nor did he have the bell rung,
nor did anything else either to avert the injury or to warn the
travelers of the train's approach.   He let them take their
chances.   One sound of the whistle when, or soon after, he
first saw them would have saved a human life.   He knew, or
should have known, that one sound of it would have meant
safety.   A continuous blowing was unnecessary, and one sound
was lawful.

The jury was liberally instructed for the defendant and the
plaintiff's instructions are not so strong as the law.   The jury's
verdict, based on their common sense, recognizing the situation
of the parties, while based on almost uncontradicted evidence,

was small in amount, and shows on its face that no hostility to the defendant entered into it.

The fact that the cars did not strike the buggy nor McLeod, but frightened the horses so that they threw him out and killed him, does not free defendant from liability, either in reason or under the authorities. *Casgrove* v. *Railroad Co.*, 41 Am. Rep., 355; 5 Rap. & Mack's Dig. Railway Law, 1032, 1040–42; 3 Lawson's R. R. & P., 2063, 2076, 2110.

At one time the doctrine of *Thorogood* v. *Bryan*, an English case, imputing to the occupant of a public conveyance for hire the negligence of the driver, was followed in this country by some of the courts; but in recent years all of the courts have repudiated this doctrine. *Little* v. *Hackett*, 116 U. S., 366; *Railroad Co.* v. *Stembenner* (N. J.), 54 Am. Rep., 136; Beach on Contributory Negligence, 141, 142; *Nesbit* v. *Garner*, 1 L. R. A., 153, note; *Howe* v. *Minnesota, etc., Railroad Co.*, 30 L. R. A., 684; *Beck* v. *Railroad Co.*, 9 L. R. A., 157.

CALHOON, J., delivered the opinion of the court.

Mr. McLeod hired an open carriage, two horses, and a driver to transport him from Winona to Stafford's Well and back. The driver was a good, safe driver, and had been in service as such for a number of years. The horses were gentle in single harness, but he had never before driven them double. They were fast roadsters for a livery stable team. It took about forty minutes to drive to the well, and the same time to return to Winona, and they remained at the well only about fifteen minutes. On returning they went west to the railroad, and at a point seventy-eight feet from the railroad's eastern iron rail to the center of the public road upon which they were traveling, in broad daylight, in an open vehicle, they had to, and did, drive through a lane made by a wire fence between them and the railroad right of way, which wire fence was on the right of way, fifty feet from the center of the railroad track on their west, and a plantation fence on their east, for a distance of three hundred

and sixty-five yards, in which drive they were never more than seventy-eight feet from the railroad track, and when they came to the point where their road turned to cross the railroad track they were but sixty-five feet from it. In order to cross the railroad track from this lane, they had to make a turn from the lane of some abruptness around the corner of the wire fence which ran along the railroad right of way, and which corner was fifty feet from the center of the railroad track. Up to the place of the turn, they were driving north, in the face of a stiff breeze coming from that direction. At the same time there was a freight train going north, unknown to them. The engineer saw them as they were driving near the turn, but sounded no alarm for that crossing, for the reason, as he says, that he feared it might frighten their horses. Be this as it may, the occupants of the open vehicle, when they got to the turn, looked back, and saw no train, but, without stopping and listening, drove around the curve of the right of way wire fence and up to near the track, when they found the engine of the northbound freight train right at them, when the engineer blew two sharp whistles. They had stopped suddenly, but too late, and the horses wheeled, threw Mr. McLeod out on the ground, causing injuries of which he soon after died. This puts the case absolutely as strong for the plaintiffs below as it can be put, and the evidence of the whisky drunk by the deceased and the driver on that drive, and of their conversation in the lane about the quality of the land in the field as they passed, is left out of view altogether.

Mr. McLeod gave the driver no directions at all, and in no way interfered with his management of the team. From the facts so put, it is too plain for controversy that, if the driver had been the party killed, no court would have permitted recovery. Recognizing this palpably clear proposition, the effort of appellees is to put Mr. McLeod in a different category, on the theory that the driver's negligence cannot be imputed to him, since he was merely the hirer of the driver, the vehicle,

and the team.     But this doctrine cannot be stretched to save a
case like this.    It is a mistake to suppose that a passenger in
an open buggy need not exercise the commonest prudence, the
most ordinary care, when the danger of his surroundings is ap-
parent.    Ordinary and natural prudence requires him to take
some action, and to check or remonstrate with the driver.
*Dean* v. *Railroad Co.*, 129 Pa. St., 514, s.c. 18 Atl., 718, 6
L. R. A., 143; *Smith* v. *Railroad Co.*, 87 Me., 350, s.c. 32
Atl., 967; and the other authorities cited in the brief of counsel
for appellant.    In *Alabama, etc., Ry. Co.* v. *Davis*, 69 Miss.,
444, s.c. 13 South., 693, this principle is recognized, and the
appellee there saved her case by the proof that she tried to stop
the driver.    One crossing a railroad, who can see, must see at
his peril.    *Murdock* v. *Illinois, etc., R. R. Co.*, 77 Miss.,
487, s.c. 29 South., 25; *Jobe* v. *Memphis, etc., R. R. Co.*, 71
Miss., 734, s.c. 15 South., 129; *Winterton* v. *Illinois, etc., R.
R. Co.*, 73 Miss., 831, s.c. 20 South., 157.    In such cases the
negligence of the railroad company in not sounding an alarm
for the crossing cannot avail to condone the lack of ordinary
care by the party injured.    On plain principles, the verdict be-
low was unwarranted, and the motion for new trial should have
been sustained.    Notwithstanding our deep sympathy with the
sufferers from the calamity, the case must be

*Reversed and remanded.*