## TOBIAS A. GIBSON v. WOOD LUMBER COMPANY.

### [45 South., 834.]

MASTER AND SERVANT. *Injuries to third persons. Actions. Evidence. Agency.*

> In an action for damages resulting from the destruction of property by fire, there being testimony showing that the fire was started by a servant of defendant, evidence that he was at the time engaged in the furtherance of his master's business should not be rejected and a peremptory instruction given for defendant.

FROM the circuit court of Covington county.

HON. ROBERT L. BULLARD, Judge.

Gibson, appellant, was plaintiff in the court below; the lumber company, appellee, was defendant there. From a judgment in defendant's favor, predicated of a peremptory instruction, plaintiff appealed to the supreme court.

The suit was for damages because of the destruction of plaintiff's property by fire, alleged to have been wrongfully set out by defendant. Defendant was engaged in the turpentine business, operating a turpentine orchard. It was shown that plaintiff's property was destroyed by fire, set out by one Melvin, an employe of defendant; and that before setting out the fire he borrowed a pitchfork to be used in controlling it. The trial court refused to allow plaintiff to show that he was actually engaged in furtherance of defendant's business at the time of setting out the fire. At the close of plaintiff's evidence defendant moved that it be excluded, and for a peremptory instruction in its behalf, which motion the court below sustained, and verdict and judgment passed for defendant.

*McWillie & Thompson* and *M. U. Mounger,* for appellant.

The suit was one demanding damages for the destruction

of plaintiff's property by fire alleged to have been set out by
the defendant lumber company.    It was shown that the property
was destroyed by fire set out by one Melvin; that Melvin was
in the employ of the defendant at the time; that he borrowed
a pitchfork to enable him to control the fire, and plaintiff
offered to show that at the time Melvin set out the fire and failed
to control it he was performing a duty owed to his master
and was engaged in defendant's work.    Notwithstanding all of
this was shown, a peremptory instruction was given for the de-
fendant presumably because of a failure on the part of the
plaintiff to show that the setting out of fire was a part of the
servant's duty to his master, or that his employment as a laborer
in the turpentine business had any connection with the setting
out of the fire.    Remember too that the plaintiff offered and
was not permitted to prove that the setting out of the fire was
the master's work.

It was unnecessary to prove by witnesses that the setting
out of fire is a part of the labor to be performed by persons
engaged in the turpentine business.    This court knows judi-
cially that turpentine is extracted from the pine tree, the
character of pine woods, that trees are boxed in  the process
of obtaining the resin and that the gum of the tree or soft
resin collects in these boxes, that the material thus collected
is highly inflammable, that pine straw is itself inflammable
and that considerable quantities of it accumulate on the ground
in pine forests, that forest fires are quite common in the
piney wood section of the state, that persons engaged in the
turpentine business have to guard with great care the tur-
pentine orchard at certain stages of progress in the business to
protect their property from fire, that it is customary to rake
the pine straw and other combustile materials from the trees
which have been boxed and in which resin had been collected,
that it would be stupid folly to allow the straw so raked from
around the trees to remain in accumulated heaps near them,
that the custom is to set the straw on fire after it has been

raked several feet away from the trees and burn it up, putting out the fire so set out before it does harm, and this court therefore knows judicially that people engaged in the turpentine business use fire in their business and set out fires in the forest.

Courts of necessity take notice of the ordinary course of business and the common methods by which it is transacted. It was therefore unnecessary to make such proof in the present case.

In support of our proposition touching judicial notice we cite the following authorities: Railway Business, *Cleveland, etc., R'y Co.* v. *Jenkins,* 66 Am. St. Rep., 296; s.c., 62 L. R. A., 922; *City of Mobile* v. *Richards,* 12 South., 793. Insurance Business, *Hill* v. *American Surety Co.,* 107 Wis., 19; Barber Business, *State* v. *Petit,* 74 Minn., 376; Patent Medicine Business, *Fowle* v. *Park,* 48 Fed., 789; Wine Business, *Vonnum* v. *Witteman,* 85 Fed., 966; Warehouse Business, *Best* v. *Muir,* 8 N. Dak., 421; Banking Business, *Farmers', etc., Bank* v. *Butchers', etc., Bank,* 26 How. Pr. (N. Y.), 1; *Bowman* v. *First National Bank,* 9 Wash., 614; 43 Am. St. Rep., 270; *First National Bank* v. *Wilmington, etc., Co.,* 77 Fed., 401; *White* v. *Cushing,* 88 Me., 331; s.c., 32 L. R. A., 590; Mercantile Agencies, *Ernest* v. *Cohn* (Tenn.), 62 S. W., 186; *Eaton* v. *Avery,* 83 N. Y., 31; 38 Am. Rep., 389; *Mooney* v. *Davis,* 75 Mich., 188; s.c., 13 Am. St. Rep., 425; Shipping Business, *Slocovich* v. *Oriental, etc., Co.,* 108 N. Y., 56; Logging Business, *Putnam* v. *White,* 76 Me., 551; Mining Business, *McDonnell* v. *Union, etc., Co.,* 35 Fed., 38; Agriculture and Husbandry, *Prescott, etc., Co.,* v. *Flathers,* 20 Wash., 454.

Of course an appellate court takes judicial notice of whatever the trial court should have known judicially. *Moundville* v. *Velton,* 35 W. Va., 217; s.c., 13 S. E., 373; Dillon's Municipal Corp., 413.

*Chalmers Alexander; Corley & Sharbrough,* and *McIntosh Bros.,* for appellee.

Plaintiff, unfortunately for himself, failed to make sufficient proof to sustain his case; hence, the peremptory instruction against him.

The gist of the charge is that defendant " through its agents was raking the straw from around its turpentine trees near plaintiff's land, and that the defendant through the negligence of its agents and servants negligently allowed fire to spread over to plaintiff's land and burn plaintiff's property."

It will be noted that the declaration does not state that the alleged agent or servant had authority to bind the defendant by his acts. No statement is made as to the scope of the agency and nothing is averred as to the relationship of the parties except that they are charged to have been master and servant.

On the trial a fire was proved; and it was shown that one Melvin set out a fire, but, it is not entirely clear that this fire caused the damage claimed by the plaintiff.

It is not shown that the fire was set out by Melvin, an employe of the company. True, Melvin set out the fire, according to the leaning of the evidence, but how can it be said that he was at the time an employe of the company or that his act could in any way make the company liable?

If it were proved that Melvin was working for the defendant, it would have to be shown further in evidence what the relation between employer and employe was, before the question sought to be asked, " state what you saw him doing out there," would be competent. It was not competent for the witness to state what he saw Melvin doing " out there," until some relationship had been shown between Melvin and the defendant company. Suppose Melvin had been proved subsequently to be in the employ of the defendant as a surgeon to render service to its employes? He would be in the employ, but if he set the woods on fire, the company would not be liable for his act. Suppose

Melvin were employed as attorney for the company, and had set out the fire. Would the company be liable? Or, if it be held that such relation is slightly different from that of master and servant, suppose that Melvin had been employed solely to drive the horses of the company. He would be an employe, but the company would not be liable for his tort in setting out a fire, this not being within the scope of his employment. If the employment were solely to mark barrels of turpentine, or to run lines of survey, or to keep books, or to sweep the office, or to do clerical work, would the company be liable for his act of setting out a fire somewhere in the woods?

It is not merely that the relationship cannot be shown by declarations of the agent, that we insist upon to show the incompetency of the questions, the refusing of which is assigned for error. The insistence of the appellee is based upon the simple fact that you must *first show* a relationship (no matter in what way you may have to show it) such as will make the master liable for the servant's acts, before proof of what the acts may be can be adduced. Opposing counsel realize this, for they say: "It (the proposition) was not to prove the agency of Melvin by showing what he was doing, but it was to show that he was in and about his master's business, and was working for the master; to show that he had scraped the straw from around his master's trees . . . and that he set out the fire in order to destroy combustible material," etc. That is to say, boiled down, the question was asked in order for witness to show that Melvin was acting in the scope of his employment. But, how can such a question as was asked be distorted into a question whose answer would or could prove the scope of the servant's employment?

In the brief of learned counsel statements are given of what the courts have judicially noticed. Let us see something which the courts will not take judicial cognizance of. Judge TERRELL, in *Railroad Co.* v. *Baird*, 76 Miss., 523, said that the courts of Mississippi would not take notice that a line of road was

laid out in Sunflower county. Yet, we may assume that such an important thing as a railroad is known to almost every adult in the county.

The supreme court of Mississippi cannot take judicial notice that the general law for working public roads by contract has been put into operation in a certain county by vote. *State* v. *Burkett,* 83 Miss., 301, s.c., 35 South., 689.

Whether or not corn has matured on Sept. 3, cannot be judicially noticed. *Culverhouse* v. *Worts,* 32 Mo. App., 419; *Dixon* v. *Nicolls,* 39 Ill., 372.

When the pasturing season terminates cannot be judicially noticed. *Gove* v. *Donner,* 59 Vt., 139.

The supreme court does not judicially know that Chattanooga is a very hot city; or that southern breezes are a necessity, and would lower the temperature. *McCorkle* v. *Driskell* (Tenn. Ch.), 60 S. W. Rep., 172.

In Michigan the courts will not take judicial notice that the state of the weather is such that the lakes and streams are not open in early spring for floating of logs. *Haines* v. *Gibson,* 115 Mich., 131.

The court cannot know what portion of Texas is comprehended in the words "the arid portion of the state of Texas" used in a legislative act. *McGeehee* v. *Hudson,* 85 Tex., 587.

Similarity of climate between Santa Cruz and Santa Clara counties, not judicially known. *Enright* v. *Santa Clara,* 95 Cal., 105.

MAYES, J., delivered the opinion of the court.

The testimony in this case shows that the damage done was because of the fire set out by Melvin. Other testimony shows that Melvin had been in the employ of the Wood Lumber Company, and was in its employ at the time the fire was set out. It was offered to be shown by the witness McCraney that Melvin was actually engaged in the furtherance of the business of the Wood Lumber Company at the time he set out

the fire.   This testimony was objected to, and the court sustained the objection, and ruled out this evidence.

Because of this error, and the additional error of granting a peremptory instruction to find for defendant at the conclusion of the testimony, the case is *reversed and remanded.*