## COLUMBUS & G. RY. CO. *v.* BUFORD *et al.**

(Division B. April 2, 1928. Suggestion of Error Overruled May 21, 1928.)

[116 So. 817. No. 27012.]

*Corpus Juris-Cyc. References: New Trial, 29Cyc, p. 832, n. 60; Railroads, 33Cyc, p. 990, n. 28; p. 1017, n. 73; p. 1087, n. 38; As to effect of personal contributory negligence of person riding in vehicle driven or controlled by another at railroad crossing see annotation in L. R. A. 1915B, 225; 22 R. C. L. 1049; 3 R. C. L. Supp. 1303. Verdict not supported by evidence as ground for new trial, see 20 R. C. L. 273; 3 R. C. L. Supp. 1050; 4 R. C. L. Supp. 1349; 5 R. C. L. Supp. 1094; 6 R. C. L. Supp. 1200.

*Gardner, Odom & Gardner,* for appellant.

*Kimbrough, Tyson & Kimbrough,* for appellees.

Argued orally by *A. F. Gardner,* for appellant, and *J. A. Tyson* and *O. L. Kimbrough,* for appellee.

ETHRIDGE, P. J. The facts in this case are very similar to those in the case of *Columbus & Greenville Railway Co.* v. *Lee,* 115 So. 782, recently decided by this court. In this case, however, the appellant, who was defendant in the court below, introduced a number of witnesses to impeach the reputation of the main witness for the plaintiff, and upon whom this case must be made out. There was no proof introduced to sustain the character of said

witness for truth and veracity, and his testimony is absolutely essential to sustain the verdict and the judgment rendered in this case. His testimony, in some respects, was corroborated by the testimony of witnesses, who testified that they did not hear the bell rung between the three hundred-yard post and the crossing. This witness, who was driving the car in which the deceased was riding, testified that the Mississippi law stop sign was placed, as required by statute, near the crossing, and that he did not stop at such sign to look or listen for the approach of the train.

There are some instructions in the present case that are different from those in the Lee case, and it will be necessary to consider these instructions on this appeal.

For the plaintiff, among other instructions, was given the following:

"No. 7. The court instructs the jury that if they believe from the evidence that the negligence of Julius Steen in operating his automobile, and the negligence of the employees of the Columbus & Greenville Railway Co., in operating its train, united in causing the accident in which Jim Buford was killed, it is no defense for the railroad company to show that Steen was to blame in causing the accident.

"No. 8. The court instructs the jury that if they believe from the evidence that the death of Jim Buford was the result of the concurrent negligence of the driver of the auto and of that of the railroad company, it is the duty of the jury to find for the plaintiff.

"No. 9. The court instructs the jury for the plaintiffs that although you may believe from the evidence that Julius Steen, the driver of the automobile, and Jim Buford, the deceased, were both guilty of negligence in causing said Buford's death, that you should, nevertheless, find for the plaintiffs if you should believe from the evidence that defendant railroad company was also guilty of negligence in causing the death of said Buford."

"No. 11. The court instructs the jury for the plaintiffs that no presumption of negligence can, under the law, be indulged against Jim Buford in this case. The legal presumption, on the contrary, is that the said Buford was not guilty of negligence. The court further charges you that the defense of the railroad company that the death of the said Buford was occasioned solely by the carelessness and negligence of the occupants of the Automobile is an affirmative defense, and, before you can find that the said Jim Buford was guilty of any negligence whatever, such negligence on his part must be established by a preponderance of evidence."

"No. 5. The court instructs the jury that if they believe from the evidence that the deceased, Jim Buford, was at the time of the accident, a guest in the auto driven by Julius Steen, and they believe further from the evidence that the said Buford was not at the time directing or controlling the movements of the auto, then the negligence of the driver of the auto, if there was such negligence, cannot be imputed to the said Buford, deceased."

The court gave the following instructions, among others, for appellant:

"No. 4. The court instructs the jury that it is the duty of a passenger in a car to exercise some care or caution for his protection, and if in this case they believe from the evidence that the plaintiff's intestate did not exercise any care and caution in approaching the crossing where he met his death, and you further believe that the defendant was guilty of no negligence, then it is your duty to find for the defendant."

"No. 6. The court instructs the jury that if they believe from the evidence that the driver of the car was reckless and that the plaintiff's intestate did not remonstrate with the driver, or use ordinary care for his safety, and that as a result he was killed because of the failure of the driver to stop, look, or listen when he attempted to cross defendant's tracks, and provided further that

the jury believed that the defendant was not guilty of any negligence in approaching its crossing, then you will find for the defendant.

"No. 7. The court instructs the jury that you, the jury, may disregard the testimony of any witness testifying in this cause, if you believe that he has testified falsely or corruptly."

The court refused for the defendant instruction A, reading as follows:

"No. A. The court instructs the jury that if they believe that the general reputation of any witness in this case has been impeached for truth, they may reject his testimony entirely."

The court also refused instruction C, which is as follows:

"No. C. The court instructs the jury if you believe from the evidence that plaintiff's intestate did not remonstrate or endeavor to have the driver of the car in which he was riding to stop, look, or listen, or did not exercise ordinary care before going upon the tracks of the defendant, and you further believe from the evidence that if the driver of the car in which plaintiff's intestate was riding had stopped, looked, or listened, or exercised ordinary care, that the injury complained of would not have occurred, then it is your duty to find for the defendant."

The court also refused instruction J, which reads as follows:

"No. J. The court instructs the jury that it was the duty of the driver of the car to stop, look, and listen before crossing the track, and that if the jury believe that the driver of the car did not stop, look, or listen, and the plaintiff's intestate did not remonstrate with him for not stopping to look or listen, and that, as a result, the accident happened through no negligence of the defendant, then the jury will promptly find for the defendant."

The instructions above set out for the plaintiff, we think, under facts of this case, called for the giving of instruction J, on the part of the defendant, and we think this instruction, under the Mississippi statute requiring automobiles to stop, and requiring the railroad company to erect signs in conspicuous places near to each crossing calling the attention of passengers and drivers of cars to the requirements of the statute, and imposing the duty upon drivers of cars to stop, look, or listen before crossing the tracks, and where there are passengers or guests in the car, and where there is light so the sign may be seen, and especially where persons know that such sign exists, and the crossing is being approached, is in full conformity with the statute; and that the passengers were required to remonstrate with the driver for his disregard of the statute, and to cause him to stop if they could do so, and to exercise, themselves, some degree of care and caution in respect thereto.

Under some aspects of the case, the negligence of the driver can be imputed to the passengers or guests. Where the law affirmatively requires all persons traveling in automobiles or motor vehicles, before crossing railroad tracks, to come to a stop and look or listen for the train, the passengers are charged with notice of this requirement, and where the sign is displayed so as to call sharp attention to the necessity of coming to such stop, and where such sign is placed at such distance from the crossing as to enable a person to come to a stop after his attention is called thereto, and it might be that the injury would have been entirely prevented had the passengers remonstrated with the driver when he attempted to pass a stop sign without coming to a full stop and looking or listening. The deceased was riding on the front seat of the car facing the railroad crossing; it was daylight, and the sign was in plain view, and the car was going rapidly.

In *Y. & M. V. R. R. Co.* v. *Lucken,* 137 Miss. 572, 102 So. 393, we commented on the instruction requested by the defendant therein which was refused, which instruction set out that it was the duty of passengers in automobiles to exercise care for their own safety saying therein:

"The duty of a passenger in a vehicle as regards a situation of this kind is discussed in *S. C. R. R. Co.* v. *McLeod,* 78 Miss. 334, 29 So. 76, 52 L. R. A. 954, 84 Am. St. Rep. 630, and *A. & V. Ry. Co.* v. *Davis,* 69 Miss. 444, 13 So. 693. In the last-named case, *Railway Co.* v. *Davis,* it was held by this court that the contributory negligence of a driver in venturing upon a railroad crossing before an approaching train, whereby his vehicle is struck, is not imputable to a temporary occupant of the vehicle, who is being driven in it by the mere invitation of its owner, and who has no control over the driver, and no reason to believe that he is imprudent. In that case a young lady was driving in a buggy with a young man who undertook to cross a railroad crossing in front of an approaching train. When she saw he was going to attempt to drive over the crossing in front of the moving train, she cried out, 'Surely, you do not intend to cross!' and upon his replying, 'Yes,' she screamed and seized him, and immediately the train was upon them and she was injured. The court, in that case, said: 'She was not bound to exercise that care and caution and take such prudent action as it may now appear would or might have produced a different result. She was only required to behave herself as the average woman of reason would have done, situated as she then was.' In the *McLeod case,* 78 Miss. 334, 29 So. 76, 52 L. R. A. 954, 84 Am. St. Rep. 630, it was held that one being driven in a carriage by another cannot recover for damages received because of the negligence of a third party, where the palpable negligence of the driver contributed to the injury, and the party injured was himself guilty of negligence in not taking action to check the driver or remonstrate with

him, having opportunity to do so and the danger being apparent. These cases show that a person occupying a vehicle driven by another over whom he had no control may be required to do something for his own safety and protection, such as to give seasonable warning or remonstrance against assuming the danger which is apparent. Such person is not under the same duty nor charged with the same degree of care as a person driving the automobile or other vehicle, and where the person driving the automobile or other vehicle is a safe and prudent and careful driver, the vigilance of the occupant of such automobile or other vehicle is considerably relaxed, and he may assume that the driver will take such caution as is reasonable and prudent under the circumstances. But if such occupant of an automobile discovers danger or sees that the driver is taking a dangerous risk or needless exposure, he should caution and remonstrate with the driver and give warning of the danger which the driver has overlooked or has not observed.''

In the case of *G. M. & N. R. R. Co.* v. *Brown,* 138 Miss. 39, 102 So. 855, we reiterated the views above expressed.

In the light of these decisions, and in the light of the facts in this case, we think it cannot be truthfully said that the negligence of the driver cannot be imputed to the deceased, and that it is no defense for the railroad company to show that Steen was a negligent party to the accident.

While it is not a complete defense to the action, if the railroad company is negligent, yet it is a defense *pro tanto,* where the negligence of the driver can be imputed to the passenger; and, for this reason, instruction J should have been given. This instruction was not given, nor requested, in the Lee case recently decided, and we think it should have been given to have more clearly conveyed to the jury the duties and obligations resting upon the various parties involved in the collision.

For the refusal to give this instruction, the judgment must be reversed.

We desire to say, however, in addition to this reason for reversal, thàt, because the testimony of Steen was impeached by four witnesses who had known him long, and were intimately acquainted with his character, and who testified that he was regarded in his own community as being unworthy of belief and credence, and that they would not believe him on oath, and, because of the fact that his testimony is contradicted so strongly by numerous witnesses whose testimony has not been impeached or whose character has not been questioned, Steen is probably not worthy of belief, especially as he was related to the deceased; and having given testimony in the interest of his kinsman's verdict, that such verdict should be set aside, and a new trial granted for hearing before another jury, although the court could not, and should not, give a peremptory instruction for the defendant because of such unsatisfactory testimony.

It appears to us that this case comes squarely within the principles announced in *M. & O. R. R. Co.* v. *Bennett,* 127 Miss. 413, 90 So. 113, and that this principle is well recognized in decisions of this state, and would, of itself, under the facts in this case, warrant a reversal of the cause, and a remanding for a new trial. This view is strengthened by the amount of the verdict, which manifestly shows that the jury were not diminishing the amount of recovery by any negligence of the deceased, and the driver, in crossing the railroad under the facts disclosed in this record.

For the errors indicated, the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*