TRUCKERS EXCHANGE BANK *et al. v.* CONROY.

(In Banc. Dec. 23, 1940. Suggestion of Error Overruled Jan. 20, 1941.)

[199 So. 301. No. 34346.]

Henley, Jones & Woodliff, of Hazlehurst, for appellants.

M. S. McNeil, of Hazlehurst, and R. L. Jones, of Brook-
haven, for appellee.

246

Argued orally by **W. S. Henley,** for appellant, and by **R. L. Jones,** for appellee.

**Smith, C. J.,** delivered the opinion of the court.

The appellee recovered a judgment against the appellants in an action for libel. The case was before this Court once before under the style of Conroy v. Breland et al., 185 Miss. 787, 189 So. 814.

The action is based on a letter alleged to have been written by the appellants, charging the appellee with having given them a deed of trust on property in her possession, but which she did not own and was without the right to encumber. The court below refused the appellants' request for a directed verdict, and, as we have arrived at the conclusion that it erred in so doing, the case will be stated in so far only as it bears on that question.

On October 28, 1937, the appellee and her husband, who were engaged in the mercantile business in Crystal Springs, were indebted to the appellant Truckers Exchange Bank in the sum of $1,450, evidenced by two notes, one for $750 and the other for $700. The first of these notes was secured by a deed of trust on real property, and

the other by a pledge of jewelry. On that day, or shortly prior thereto, Breland, the president of and acting for appellant bank, agreed to permit the Conroys to renew these notes and to lend them $250 additional. Pursuant to this agreement, a new note from the Conroys to the bank, for $1,700, was executed by the Conroys to the bank, secured by a deed of trust on real property and the jewelry hereinbefore mentioned. The description of the property in the deed of trust, when recorded shortly after its execution in the office of the chancery clerk, and when offered in evidence in the court below, covered the home of the Conroys and another piece of real estate which they had formerly owned but had sold several years theretofore, and "all furniture and fixtures in store we now occupy on R. R. Ave." The jewelry, heretofore mentioned, was listed on the back of the note in a memorandum signed by Mr. and Mrs. Conroy, in addition to their signatures on the face of the note. The Conroys did not own a large part of the furniture and fixtures then in their "store" and being used by them.

Some time after the execution of this deed of trust, Mr. Conroy died, and Mrs. Conroy went into bankruptcy, whereupon Batton, the owner of a portion of the fixtures in the Conroy store, obtained, and was holding, possession thereof. On learning this, the trustee in the deed of trust given by the Convoys to the appellant bank, who was also its regularly retained attorney, wrote a letter to Batton informing him that the fixtures in his possession were covered by the bank's deed of trust. We will assume that the evidence discloses that this letter was written for the bank at Breland's request. Afterwards this action was brought by the appellee as set forth in Conroy v. Breland et al., supra.

One of the fundamental elements of the appellee's cause of action is the charge in her declaration that the deed of trust did not cover the furniture and fixtures when she and her husband signed and delivered it, but that thereafter it was fraudulently altered by the appellants

by the insertion of the furniture and fixtures in the description of the property covered by the deed of trust. The only persons who could know whether this allegation was true or not were Mrs. Conroy, Breland, Carmichael, the cashier of the bank, and Mrs. Wallace, Breland's secretary, all of whom testified. Mrs. Conroy said that she went to the bank on the day the deed of trust was executed and read it. Later in the day it was brought to her home, where her husband was sick in bed, by Mrs. Wallace, the secretary of Mr. Breland, who was also a notary public. She then read it to her husband, after which the deed of trust and the note were signed by them, the deed of trust being acknowledged before Mrs. Wallace.

Mrs. Conroy, after testifying that she read every line of the deed of trust, said that she had read only the typewritten and not the printed portions thereof. She said that when she and her husband signed the deed of trust the only real property described therein was their home, that no furniture or fixtures were drescribed therein, and that the jewelry appeared in the deed of trust, and not on the back of the note which she and her husband executed. When asked why she and her husband wrote their names on the back of the note, she said it was at Mrs. Wallace's request, for what purpose she did not know.

According to the testimony of Breland, Mrs. Wallace and Carmichael, the deed of trust and the note were prepared by Mrs. Wallace, who obtained the description of the real property from the prior deed of trust executed to the bank by the Conroys, and, at Breland's direction, added thereto the furniture and fixtures and listed the jewelry on the back of the note with two typewritten lines for the signatures of the Conroys thereunder. The memoranda on the back of the note is as follows:

"This note is secured by the following collateral:

"Deed of Trust on our home and tenant house in the City of Crystal Springs.

"All furniture and fixtures in store now occupied by us on Railroad Ave., between Crystal Theater and Crystal Style Shop.

"Two Solitaire Diamond Ring

"Three Diamond Clusters

"One Diamond Bar Pin

"Two Diamond Earrings with ruby in center, which we have turned over to the Truckers Exchange Bank.

"W. E. Convoy<br>"Mrs. Ora G. Conroy."

Breland said that Mrs. Conroy had agreed to secure the new note with the collateral to the former notes, and also by the mercantile business in which she and her husband were engaged, and that knowing he could not take a deed of trust on a mercantile stock of goods, he had the furniture and fixtures inserted in the deed of trust in lieu thereof, to which he did not specifically call Mrs. Conroy's attention.

Should the appellants' request for a directed verdict have been granted? A verdict for the appellee must rest on her testimony alone. None of the other evidence lends any support thereto, but, on the contrary, all of it is in direct conflict therewith.

In order to recover, the appellee, among other things, must prove her charge against the appellants that they fraudulently altered the deed of trust in a material particular after its execution, thereby committing the crime of forgery. Where, in a civil case, fraud involving moral turpitude or the commission of a crime is charged, the act constituting the fraud must be proven by "clear and convincing" testimony. To cite the numerous decisions of this Court so holding would be supererogatory. In a case tried to a jury whether evidence in support of a charge of fraud measures up to this standard is ordinarily for the determination of the jury; but when it manifestly falls below this standard and is not "of such a real and substantial nature that impartial men of sound judgment could reasonably believe it, and prudently act thereon,"

then the trial judge should not permit the jury to consider it, but direct them to return a verdict for the opposing party. Thomas v. Williamson, 185 Miss. 83, 187 So. 220, 221. In other words, where it is manifest that no reasonable man engaged in a search for truth, uninfluenced by improper motives or considerations (e. g., passion, prejudice, or corruption), would accept or act on the evidence, the jury should not be permitted to consider it. But formulas aside, for they cannot be all inclusive and exclusive, and ordinarily are not of great value to the trial judge, for "general propositions do not decide concrete cases. The decision will depend on a judgment or intuition more subtle than any articulate major premise." Holmes, J., in Lochner v. New York, 198 U. S. 45, 76, 25 S. Ct. 539, 547, 49 L. Ed. 937, 949, 3 Ann. Cas. 1133; Hutcheson, "Judgment Intuitive," 14.

One has but to consider the testimony of the appellant to arrive intuitively and confidently at the conclusion that it cannot be safely accepted and acted on, particularly in support of such a grave charge as the one here; for it is manifest therefrom that the appellee does not accurately remember the contents of the deed of trust, and was mistaken in thinking she does. For instance, she was evidently mistaken in saying that the jewelry was not listed on the back of the note but was included in the property described in the deed of trust, and had she read the deed of trust as carefully as she now thinks she did, she would have discovered that it covered, as it evidently did, real property which she did not own and which she says she did not intend to include therein. No verdict based on this evidence should be permitted to stand; consequently, the court below should have granted the appellants' request for a directed verdict, as to which, on the evidence, there is "no room for doubt." Perry v. Clarke, 5 How. 495, 500, and numerous cases cited in 14 Mississippi Digest, Trial, 139.

Reversed, and judgment here for the appellants.

## Specially Concurring Opinion.

**McGehee, J.**, delivered a specially concurring opinion.

If the record in this case presented merely an instance where the verdict is clearly against the overwhelming weight of the evidence, I would favor reversing the case for a new trial on that ground for the reason that I am of the opinion that Section 592 of the Code of 1930 which authorizes the circuit court to grant as many as two new trials to the same party in any cause was enacted to serve a wholesome purpose in the administration of justice, and that it often becomes the duty of the trial court to exercise the right granted by that statute rather than to grant a peremptory instruction in some instances. But in view of the fact that the plaintiff in the court below in testifying that the fixtures in question were not listed in the deed of trust at the time she signed it, also further testified positively that other collaterals were listed in the face of the deed of trust instead of on the back of the note, and which we find were not in fact listed therein, but were listed on the back of the note contrary to her view of the matter, it is manifest that she was clearly mistaken in her recollection as to what property was described in the deed of trust at the time it was executed, and that therefore the testimony is so unsatisfactory as to be wholly insufficient to support a finding that the defendants altered the deed of trust after it was signed. I must therefore concur with the conclusion stated in the majority opinion.

## Dissenting Opinion.

**Ethridge, J.**, delivered a dissenting opinion.

While the evidence for the plaintiff in the court below seems to me to be against the weight of the evidence as a whole, and a new trial should be had for that reason, still I think the case should go to the jury, and is not one for

a peremptory instruction. There is a vital distinction between a case in which a peremptory instruction is proper, and a case where a verdict of the jury should be set aside because against the overwhelming weight of the evidence. It is true, the line of distinction is not always very clear, but the controlling principles are clear. The principles are sufficiently indicated in the cases of Mobile & O. R. Co. v. Johnson, 165 Miss. 397, 141 So. 581; Newton v. Homochitto Lbr. Co., 162 Miss. 20, 138 So. 564; Columbus & G. R. Co. v. Buford, 150 Miss. 832, 116 So. 817.

I do not think that the facts of this case bring it within the principle of Thomas v. Williamson, 185 Miss. 83, 187 So. 220. The majority opinion also cites Perry v. Clarke, 5 How. 495, 497, and 14 Mississippi Digest, Trial, 139. In Perry v. Clarke, supra, in the syllabus it is said: "It is the province of the court to determine whether the evidence conduces to prove the issue." The word "conduces" as here used is in the sense of tends; but it does not authorize the court to decide the issue as to whether evidence, competently admitted, which tends to prove the issue, in fact does so.

In the second syllabus it is said: "When the plaintiff has wholly failed to make out his case, and there is no conflicting testimony, the court may instruct the jury to find for the defendant." This announcement does not authorize the court to decide on the weight of conflicting evidence. Where the evidence for one party, taken alone or in connection with admitted facts, would sustain the case for that party, the court is not presumed to substitute its opinion for that of the jury in weighing the evidence in the case. This case does not support the decision in the case now before us.

So far as the authorities in 14 Mississippi Digest, Trial, 139, are concerned, there are authorities from the Federal Court which hold in accordance with the views of the majority opinion. But the state court is not bound by the Federal Court rule on matters controlled by the Mississippi law—that is, the state law. While we have a high

respect for the Federal Court, the state Supreme Court is entitled to give authoritative decisions as to the state law—which decisions are binding on the Federal Court. See Erie R. Co. v. Tompkins, 304 U. S. 64, 58 S. Ct. 817, 82 L. Ed. 1188, 114 A. L. R. 1487, overruling Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Wichita Royalty Co. v. City Nat. Bank, 306 U. S. 103, 59 S. Ct. 420, 83 L. Ed. 515, and case note at page 519; Railroad Comm. v. Rowan & Nichols Oil Co., 310 U. S. 573, 60 S. Ct. 1021, 84 L. Ed. 1368. But it will be seen from the cases collated in the Digest, under the key number referred to, that the state Supreme Court has, in many cases there cited, announced the law contrary to the holding of the majority opinion here.

At one time there were decisions of this Court to the effect that if the court would set aside a verdict rendered by the jury, it should give a peremptory instruction. McFadden v. Buckley, 98 Miss. 28, 53 So. 351. But the fallacy of that view was soon perceived, and the true doctrine was again adopted, to conform to the policy of the state, as indicated by the statutes, sections 592 and 593 of the Code of 1930.

The degree of proof necessary to entitle a party to a peremptory instruction is very much greater than that necessary to entitle him to the verdict of a jury. Alabama Great Southern R. Co. v. Daniell, 108 Miss. 358, 66 So. 730.

Where there is evidence to support an issue, it should be submitted to the jury, and the decision of the jury on the issue is binding unless contrary to the overwhelming weight of the evidence. Gibson v. W. C. Wood Lbr. Co., 91 Miss. 702, 45 So. 834; Bolling v. Red Snapper Sauce Co., 97 Miss. 785, 53 So. 394; Hayes v. Slidell Liquor Co., 99 Miss. 583, 55 So. 356.

In testing the question as to whether the proof is sufficient to go to the jury, the test must be the proof for the party against whom a peremptory instruction is sought. If the evidence of that party alone would sustain a suit or verdict for the parties offering the evidence, it

should be submitted to the jury, although the preponderant weight of the evidence was against that party, and the jury should determine the conflict.

Under our statute above cited this Court can set aside a verdict, when fully satisfied that it is contrary to the overwhelming weight of the evidence. But its power to do so is limited by statute, and after two juries have approved the evidence by returning a verdict, that verdict is binding upon the court.

Many authorities could be cited to show that the court has no power to give a peremptory instruction where there is competent evidence for the party against whom the instruction is sought, which would sustain the verdict if submitted to the jury, and verdict found, although in the opinion of the judge the evidence for the opposite party might strongly preponderate. Jury trial is a very important institution in our government, and rightly so, because the jury is usually made up of twelve men from different walks of life, of good intelligence, sound judgment and fair character, as required under the law. When the facts are considered by twelve such men, the prejudice of one may be offset, during the deliberations, by the contrary views of the others. Out of twelve such minds, solemnly deliberating upon the evidence and guided by the instructions of the judge, a correct conclusion is apt to follow. Even judges are not perfect instruments for weighing evidence and reaching indisputable conclusions. This is a government of divided powers. There is sound wisdom in the division of powers in all branches of the government, as is the case in Mississippi. The Court should be careful to give effect to the decisions of the jury (under judicial control of the evidence which may go to it), and the rules of law which should be applied thereto. For in such a combination there is apt to be greater security than in the uncontrolled opinion of a judge.