319 So.2d 652 (1975)
PAYMASTER OIL MILL COMPANY, a Division of Anderson Clayton and Company, Plaintiff-Appellant,
v.
Dennis MITCHELL, Defendant-Appellee.
No. 48281.
Supreme Court of Mississippi.
September 29, 1975.
*654 Brunini, Everett, Beanland & Wheeless, Robert A. Weems, Vicksburg, for plaintiff-appellant.
David Shoemake, Collins, for defendant-appellee.
Before PATTERSON, INZER and SUGG, JJ.
PATTERSON, Justice:
Paymaster Oil Mill Company brought suit in the Circuit Court of Covington County to recover damages for breach of contract. It alleged that Dennis Mitchell, the appellee, failed to deliver the quantity of soybeans he had agreed to supply, thereby monetarily damaging the plaintiff. After hearing evidence of both plaintiff and defendant, the trial court "directed a verdict" for Mitchell based upon the "force majeure" statute of the Uniform Commercial Code, specifically Mississippi Code Annotated section 75-2-617 (1972).
In July 1972 Mitchell, a farmer of Covington County, discussed with Benny Franklin, the plant manager of Paymaster Oil Mill Company, the prospects for fall delivery of soybeans to Paymaster. An oral agreement between the two was reached whereby Mitchell contracted to deliver 4000 bushels of soybeans at $3.11 a bushel in October and November of 1972. On July 19, 1972, a written confirmation, prepared by Paymaster, was executed by Mitchell and Franklin corroborating their oral agreement. In addition to the amount, price, and time of delivery the confirmation contains the following language: "We confirm the purchase from you, as per our conversation Dennis Mitchell/Benny Franklin... ."
In August Covington County suffered a severe and unusual drought, greatly damaging the soybeans Mitchell was cultivating. He did not notify Paymaster of his damages, but delivered to Paymaster in October and November 1835.51 bushels, his entire crop.
In the meantime Paymaster, relying on the agreement for delivery of 4000 bushels of soybeans at $3.11 a bushel, had contracted for its products to be sold and when the failure to deliver 4000 bushels occurred, was compelled to purchase soybeans at $3.66 per bushel to cover the deficit. This suit is for the losses incurred by Paymaster by reason of the greater price it had to pay for beans to make up the shortage occasioned by Mitchell.
As mentioned, the trial court "directed a verdict" for Mitchell after evidence had been introduced by both parties and both had rested their case. We are of the opinion the "directed verdict" was properly granted and that the case should be affirmed. The reasons therefor require that the appellant's assignments of error be considered in conjunction with each other rather than separately. They are: (1) The court erred in sustaining the defendant's motion for a directed verdict, (2) erred in admitting testimony in violation of the parol evidence rule and (3) refused to admit evidence of custom and uses of the soybean trade.
The plaintiff's case was based upon the written agreement for the delivery of 4000 bushels of beans at $3.11 per bushel and evidence that Mitchell delivered only *655 1835.51 bushels, creating a deficit which was overcome by the purchase of beans at a higher price. This evidence established a cause of action upon which the plaintiff was entitled to recover. The trial court therefore correctly overruled the defendant's motion for a directed verdict at the close of the plaintiff's case.
However, the defendant then testified, over objection, to the conversation between him and Franklin in explanation and supplement of the written agreement. This evidence follows:
A. I was directed back to his office, introduced myself, he introduced himself, we shook hands, I told him I was a soybean farmer in Collins, Mississippi, I had 200 acres of soybeans, I'd love to book them, and what's the price today. He explained to me the price was $3.11. He asked me how the beans looked. I told him excellent.
Q. You told him what?
A. Excellent. He asked me how my neighbors' beans looked and I told him wonderful. He gave me the price of $3.11. We discussed how many acres to book and, to be on the conservative side, he suggested 20 bushels to the acre, which was agreeable to me; and I dismissed myself and come on back to the house.
* * * * * *
Q. All right, sir. Now, tell me, based upon the conversation between you and Mr. Franklin, tell me whether you discussed this in terms of bushels or in terms of acres and expected production from those acres?
* * * * * *
A. Mr. Adams, the conversation reflected all three. I believe he initiated, "How many acres do you have?" My answer, "200 acres." Okay. To be on the conservative side, let's book 20 bushels to the acre, which would  4,000 bushels; and that is what we agreed on, 4,000 bushels.
Franklin, Paymaster's manager, when queried on the contract between him and Mitchell, stated that he did not recall whether the conversation occurred in person or whether it was by telephone, testifying: "I cannot testify as to the specifics of the conversation, I cannot," and when reexamined on the point, repeated that he simply did not know and could not recall any part of the conversation with Mitchell. When pressed by counsel, he stated he did not know Mitchell's occupation and consequently did not know that he was a farmer.
At the time of the defendant's motion for a peremptory instruction the trial court had evidence before it additional to that at the conclusion of the plaintiff's case. The trial court sustained the motion, reasoning there was no conflict of evidence or inferences arising for resolution by the jury. We are of the opinion the peremptory instruction was properly granted.
We have held many times that in passing on a motion for a directed verdict the court must look only to the testimony adduced for the plaintiff and accord truthfulness to it and indulge all favorable inferences that could be drawn therefrom, and if either is sufficient to support a verdict, then the motion for a directed verdict should be overruled. We have also stated in considering a motion for a directed verdict that it should be overruled even though a verdict in favor of the plaintiff would be contrary to the overwhelming weight of the evidence. King v. Dudley, 286 So.2d 814 (Miss. 1973).
In announcing this rule we have often used the term "solely" or "only," or their equivalent, thereby restricting the evidence considered for the purposes of the motion to that of the plaintiff. Ezell v. Metropolitan Ins. Co., 228 So.2d 890 (Miss. 1969); Meaut v. Langlinais, 240 Miss. 242, 126 *656 So.2d 866 (1961); Buntyn v. Robinson, 233 Miss. 360, 102 So.2d 126 (1958), and other cases not necessary to cite. We have also stated the test for determining whether or not a motion for a judgment notwithstanding the verdict should be sustained is the same. Carlize v. Richards, 216 So.2d 422 (Miss. 1968); Hawkins v. Hillman, 245 Miss. 385, 149 So.2d 17 (1963), and the cases cited therein.
These rules probably emanate from a common law "demurrer to the evidence," but whatever their source, they have been implemented by this Court, doubtless to preserve the plaintiff's statutory right to two new jury trials if there be a conflict of fact for resolution. [Miss. Code Ann. § 11-7-213 (1972)]. This necessitates a different result when a motion for a directed verdict, a peremptory instruction or a motion for a judgment n.o.v. is sustained from that of a motion for a new trial because the verdict is against the preponderance of the evidence. The former denies a new trial. The latter permits it.
In Mobile & O.R. Co. v. Johnson, 165 Miss. 397, 141 So. 581 (1932), it is stated:
... The rule is that, laying aside and leaving out of view the testimony in behalf of defendant, if the evidence in behalf of the plaintiff is sufficient in law to establish the legal right of the plaintiff in issue and is not inconsistent with the admitted physical facts or with natural laws or common knowledge, and, so viewed, the plaintiff's testimony taken alone is such that reasonable men, acting reasonably, could reasonably believe that the testimony and prudently act upon it, then a peremptory instruction for the defendant must not be given. When, however, all the testimony has been heard and all the arguments delivered and the verdict returned, if, upon a completed view of the entire case, the trial judge is then of the opinion that the verdict is against the overwhelming weight, or clearly against the great preponderance, of the evidence, his duty is, upon a motion for a new trial, to set aside the verdict and grant a new trial. In the latter respect, and to the extent mentioned, the trial judge has a responsible part in the final determination of the issue upon the facts, and his duty of superintendence in that regard is one of his constitutional obligations. 165 Miss. at 403, 141 So. at 582.
See also Gunn v. Grice, 204 So.2d 177 (Miss. 1967); Newton v. Homochitto Lbr. Co., 162 Miss. 20, 138 So. 564 (1932); and Columbus & G. Ry. Co. v. Buford, 150 Miss. 832, 116 So. 817 (1928).
The motions, which preclude a new trial if sustained, of course arise at different stages of a case: the motion for a directed verdict at the conclusion of the plaintiff's evidence, a request for a peremptory instruction at the conclusion of the plaintiff's and defendant's case and a motion for a judgment n.o.v. upon the jury's verdict, but prior to judgment. These motions necessarily contemplate a consideration of different evidence and inferences arising during the course of trial. A motion for a directed verdict encompasses testimony of the plaintiff and its favorable inferences, whereas, the evidence considered on a request for a peremptory instruction or a judgment n.o.v. embraces the testimony on behalf of the plaintiff as well as that of the defendant, there being no difference between that considered for a peremptory instruction and a judgment n.o.v. since the latter is entertained only to correct the court's error in refusing a requested peremptory instruction. Floyd v. Lusk, 190 So.2d 451 (Miss. 1966); and Palmer v. Gardner, 226 Miss. 123, 83 So.2d 800 (1955).
An incongruity, however, arises from our decisions since we have held the test for a directed verdict is the same as that for a peremptory instruction or a judgment n.o.v. This has been compounded by our language indicating that the consideration of a peremptory instruction or judgment n. *657 o.v. is restricted to the "sole" evidence of the plaintiff when in fact there is other evidence. This is illustrated, we think, by the posture of this case. If we look solely to the evidence of the plaintiff, a written confirmatory contract of purchase, a breach of its terms and resultant damages, the defendant is not entitled to a directed verdict.
On the other hand, if not so restricted and permitted to consider the uncontradicted testimony of the defendant in conjunction with the written confirmatory contract introduced by the plaintiff, the entire contract emerges with a different legal result, entitling the defendant to a peremptory instruction. In General Tire & Rubber Co. v. Darnell, 221 So.2d 104 (Miss. 1969), we applied, in considering a judgment n.o.v., the following:
The established rule is that when the court considers whether the defendant is entitled to a judgment as a matter of law, the court should consider the evidence in the light most favorable to plaintiff, disregard any evidence on the part of defendant in conflict with that favorable to plaintiff, and if the evidence and reasonable inferences to be drawn therefrom would support a verdict for plaintiff, the jury verdict should not be disturbed. 221 So.2d at 105.
The quotation above, we believe, expresses the better rule for a peremptory instruction or a judgment n.o.v. since it permits the court to examine the evidence of both parties that is not in conflict, as here, in order to reach a legal conclusion; or stated differently, the jury resolves conflicts of fact  the court resolves issues of law arising from nonconflicting facts.
In reviewing the present evidence, we conclude, as did the trial court, that the written confirmation was not the entire contract between the parties since the conversation of Mitchell and Franklin was incorporated into it. This conversation, when explained by Mitchell, indicates that Paymaster agreed to purchase 4000 bushels of beans produced by Mitchell from 200 acres he was cultivating as a farmer, in short, his soybean crop, but not in excess of 4000 bushels. We think this construction by the trial court was reasonable and logical, leaving no conflict of fact for resolution by a jury. We therefore conclude the peremptory instruction was correctly granted if the parol testimony was properly permitted into evidence.
In responding to the last question, we first note that Mississippi Code Annotated section 75-2-202 (1972) provides:
Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
(a) by course of dealing or usage of trade (Section 1-205) [§ 75-1-205] or by course of performance (Section 2-208) [§ 75-2-208]; and
(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.
We ascertain the legislative intent from this enactment to be that parol evidence may not be used to contradict the terms of confirmatory memoranda of a written agreement intended as the final expression of a contract, but that it might be explained or supplemented by evidence of consistent additional terms unless there be an adjudication the writing was intended as an exclusive statement of the agreement. In our opinion the terms of the present written memoranda were not intended as the exclusive statement of the *658 agreement as is evidenced by the reference to the conversation made a part of it. This accords with out decision in Valley Mills v. Southeastern Hatcheries, 245 Miss. 71, 145 So.2d 698 (1962) [pre UCC], permitting parol evidence in explanation of a written agreement. And see Bunge Corporation v. Miller, 381 F. Supp. 176 (W.D. Tenn. 1974). Cf. Noble v. Logan-Dees Chevrolet-Buick, Inc., 293 So.2d 14 (Miss. 1974), a written contract intended as the final expression of the parties, which was the subject of an interesting discussion in 46 Miss.L.J. 192 (1975). We conclude the parol testimony to have been properly admitted to bring the entire contract before the court.
We are of the opinion the contention of the appellant directed to the "force majeure" clause, Mississippi Code Annotated section 75-2-617 (1972) [UCC], is controlled by Dunavant Enterprises, Inc. v. Ford, 294 So.2d 788 (Miss. 1974), since there was no contradiction of the drought conditions affecting Mitchell's crops. We there stated:
... The rule is that if the parties contract for the purchase and sale of all or a part of a particular crop to be grown in the future from a particular tract or tracts of land and by reason of weather conditions or other forces of nature the seller is unable to plant all or part of the crop or if all or part of the crop fails or is destroyed by conditions beyond the control of the seller, nonperformance to the extent of the failure is excused in the absence of an expressed condition in the contract to the contrary. The reason for this rule is that the parties to the contract for the sale of a crop to be grown in the future are well aware of the fact that weather and other conditions of nature control to a large extent the ability of the seller to grow and harvest the crop contemplated. Therefore, the absence of an express condition in the contract to the contrary, the foregoing rule is an implied condition of the contract. 294 So.2d at 792.
Finally, we think the trial court did not err in rejecting the plaintiff's evidence relating to custom and usage of the soybean trade. Mississippi Code Annotated section 75-1-205 (1972) provides in part:
(6) Evidence of a relevant usage of trade offered by one party is not admissible unless and until he has given the other party such notice as the court finds sufficient to prevent unfair surprise to the latter.
A study of the record indicates the trial court did not abuse its discretion in rejecting this offer of evidence by Paymaster since it came late in the trial and probably would have denied the defendant an opportunity to rebut it absent continuance or other disruption of trial.
Affirmed.
GILLESPIE, C.J., RODGERS, P.J., and SMITH, ROBERTSON, WALKER and BROOM, JJ., concur.