Wander Limited sued Krouse Co., Inc. in the Circuit Court of Adams County for breach of contract, seeking fifty-three thousand four hundred dollars ($53,400) damages. The jury returned a verdict for Wander Limited in the sum of fifty-four hundred dollars ($5,400) and it has appealed, assigning the following errors:
(1) The trial court erred in refusing the peremptory instruction; and
(2) The trial court erred in overruling the motion for judgment notwithstanding the verdict filed by appellant.
The appellant requested that the court direct the jury to return a verdict for it in the amount of $53,400, which was refused. It then asked that the court instruct the jury to return a verdict for the plaintiff and to assess its damages at such amount as the jury might find from a preponderance of the evidence would fully compensate it for damages suffered because of the breach of contract by defendant, which also was refused. The rule applicable upon request for a peremptory instruction is that the facts of the case most favorable to the party against whom it is requested, along with reasonable inferences, be taken as true, that all evidence of the party seeking same which is contradicted, be disregarded, and, if the evidence is insufficient to support a verdict, the peremptory instruction should not be given. Paymaster Oil Mill Co. v. Mitchell,319 So.2d 652 (Miss. 1975).
The facts of the present case most favorable to appellee indicate that on June 19, 1975, appellant ordered from appellee thirty thousand (30,000) pounds of Junior Mammoth pecan halves. Appellee was in the business of buying pecans, shelling them and retailing the halves to other companies. Appellant was in the business of manufacturing candies and used shelled pecan halves in the process.
The pecans ordered by appellant were to be used in its business for the year 1976. Delivery of the pecans ordered on June 19, 1975, was to be made in January or February of 1976. The order was confirmed by appellee on June 25, 1975. Appellee notified appellant by letter dated November 7, 1975, that the year 1975 was bad for quality pecans and that it would not be able to fill the order with the size requested. On December 15, 1975, appellee wrote appellant that the situation had worsened and that there were no good large-size pecans from which the order might be filled. Subsequently, there was considerable correspondence between the parties relating to a solution of the problem. On June 8, 1976, among other alternatives, appellee suggested payment of a cash settlement by it and on December 8, 1976, suggested a token payment to bring the matter to an end.
After being notified that appellee was unable to perform the contract, on January 20, 1976, appellant contracted for, and purchased, from South Georgia Pecan Company 30,000 pounds of large-size pecans at one dollar sixty-seven cents ($1.67) per pound. On the same date, it purchased an additional 30,000 pounds of large pecans from South Georgia Pecan Company for the same price per pound. The contract between appellant and appellee on June 19, 1975 provided for the sale by appellee to appellant of 30,000 pounds of Junior Mammoth pecan halves at a price of one dollar forty-nine ($1.49) per pound. Attorneys representing appellant wrote appellee a letter on January 13, 1977 that, if appellees had not delivered the pecans or made arrangements for delivery by January 31, 1977, legal proceedings would be commenced against appellee for breach of the contract.
Mr. Hugh Chevreau, an officer in the appellant firm, testified that his company covered its loss of pecans from appellee under the June, 1975 contract, and that it *Page 237 
purchased all the pecans it needed for the year 1976, which was the year appellee's contract required delivery of the pecans. He also testified that appellant purchased all the pecans it needed for the year 1977. Appellant did not advise appellee of the two 30,000-pound purchases of pecans it made on January 20, 1976, at a cost of $1.67 per pound.
We are of the opinion that the letter from appellee to appellant dated November 7, 1975, advising that it would not be able to fill the order with Junior Mammoth pecan halves placed appellee in the position of an anticipatory breach of contract. Mississippi Code Annotated Section 75-2-610 (1972) provides the following:
 "When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may
 (a) for a commercially reasonable time wait performance by the repudiating party; or
 (b) resort to any remedy for breach (Section 2-703 or Section 2-711) [§§ 75-2-703 or 75-2-711], even though he has notified the repudiating party that he would await the latter's performance and has urged retraction; and
 (c) in either case suspend his own performance or proceed in accordance with the provisions of this chapter on the seller's right to identify goods to the contract notwithstanding breach or to salvage unfinished goods (Section 2-704) [§ 75-2-704]."
Under the Uniform Commercial Code, all contracts therein are required to be performed in good faith. Mississippi Code Annotated Section 75-1-203 (1972) states: "Every contract or duty within this code imposes an obligation of good faith in its performance or enforcement."
The UCC extends to the person injured by breach of a contract the right and duty to cover his losses, that is, to buy the goods contracted for reasonably on the market and then to recover his damages from the party breaching the contract at the difference between the contract price and the cover price. In the present case, it is undisputed that the contract price was $1.49 per pound for 30,000 pounds of pecan halves that were ordered for use in the 1976 business year of appellant. Also, it is undisputed that appellant bought sixty thousand (60,000) pounds of large-size pecans on January 20, 1976 in two different purchases of 30,000 pounds each at a price of $1.67 per pound. These purchases were made, according to Mr. Chevreau, after appellant learned that appellee would not be able to perform the contract and for the purpose of covering the 30,000 pounds of pecans provided for in said contract.
Under the facts of this case, we are of the opinion that the trial court correctly denied appellant's request for a peremptory instruction directing the jury to return a verdict for it in the full amount sued for ($53,400). The appellant also asked for and was granted Instruction P-7, the latter part of which told the jury ". . . [Y]ou shall return a verdict for Plaintiff and assess its damages at such amount as you find from a preponderance of the evidence will fully compensate it for damages it suffered as a proximate result of the breach of such contract by the Defendant."
We are further of the opinion that the motion for judgment notwithstanding the verdict was also properly overruled, and that there was a jury question for determination of the full amount of damages sustained by appellant under all the facts of the case. Since the jury found for the appellant, and fixed its damages, the appellant was not prejudiced by refusal of the second requested peremptory instruction that the jury find for appellant and fix its damages in an amount that would fully compensate it for damages suffered because of the breach of contract by appellee.
Although the jury was not instructed otherwise than on mitigation of damages, it apparently arrived at its verdict of $5,400.00 by subtracting the difference between $1.67, the amount paid by appellant *Page 238 
for pecans it purchased January 20, 1976, and $1.49, the amount per pound appellant was to pay appellee for 30,000 pounds under its contract of June 25, 1975, and multiplying the difference by the 30,000-pound figure. The verdict appears to be a logical one and supported by the evidence, and appellant cannot be heard to complain. Winfield v. Magee, 232 Miss. 57, 98 So.2d 130 (1957);Harris v. Pounds, 185 Miss. 688, 187 So. 891 (1939).
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.