393 So.2d 1342 (1981)
Larry TAYLOR
v.
Ollie WARD.
No. 52415.
Supreme Court of Mississippi.
February 18, 1981.
*1343 Charles C. Jacobs, Jr., Jacobs, Griffith, Pearson, Eddins & Povall, Cleveland, for appellant.
Mitchell M. Lundy, Lundy & O'Neal, Grenada, for appellee.
Before ROBERTSON, BROOM and BOWLING, JJ.
BROOM, Justice, for the Court:
Peremptory instruction granted the plaintiff Ollie Ward (appellee here) in his suit against the defendant Larry Taylor (appellant here) highlights this appeal from the Circuit Court of Grenada County. Two questions are presented here: was the plaintiff erroneously given a peremptory instruction and did the trial judge err in evidentiary rulings?
Purchase of a D-7 Caterpillar bulldozer (dozer herein) by defendant Larry Taylor (Taylor herein) from the plaintiff forms the factual background in this suit. In August 1979, plaintiff Ward advertised the item for sale in the Commercial Appeal; his ad stated that the dozer was in "A-1 condition." After seeing the ad, defendant Taylor, accompanied by his brother Doug Taylor (Doug herein), came to the plaintiff's place in Grenada County and briefly tested the dozer. The parties agreed upon a sale price of $9,500, and the defendant gave plaintiff a $9,500 check. The next day the defendant and his brother came back to Grenada and took possession of the dozer.
While the defendant and Doug were there, they found out that the plaintiff also had a dragline for sale which Doug purchased for $5,000 by check which he gave to the plaintiff. When the dragline was delivered, the Taylors discovered that it lacked the bucket and harness. Later the next day the plaintiff delivered the bucket to Doug Taylor but did not deliver the harness. When the two Taylor brothers discovered that the harness was not delivered, Doug called the Bank at Shaw to stop payment on his $5,000 check which he had given for the dragline. By that time, the plaintiff had gone to the Bank and cashed the $5,000 check. Unhappy about the $5,000 check already being cashed, the Taylors agreed that the defendant would stop payment on the $9,500 check issued the plaintiff as payment for the dozer until the plaintiff delivered the harness to Doug. Accordingly, Larry stopped payment. Unable to cash the $9,500 check, plaintiff Ward called defendant Taylor and asked about payment being stopped. Taylor testified at trial that he told Ward that the dozer "wasn't as he said it was ... and he should take ..." it back. Taylor also explained that he stopped payment because the plaintiff had failed to deliver the dragline harness but that he would make it good when and if plaintiff delivered the harness. Following plaintiff's delivery of the harness several weeks later, the defendant refused to make the $9,500 check good because he had become dissatisfied with the dozer.
In December 1979, plaintiff Ward sued Taylor to recover the $9,500 dozer purchase price, plus an additional 25% damages. Defendant's answer contained his denial of the declaration's material allegations and also an affirmative defense that he was justified in not making the check good

*1344 since there had been a breach of the warranty as expressed by plaintiff at the time of purchase and also a breach of the implied warranty of fitness for the purposes intended, all in violation of § 75-2-315, Mississippi Code of 1972... .
Defendant's answer also alleged that
he did not intend to defraud Plaintiff in any way by stopping payment on the check but that his initial stop payment was required in order to make Plaintiff live up to his total contract between Plaintiff and Defendant and his brother. Defendant states further that the check was not made good later because in the meantime, Defendant had attempted to use the bulldozer and found that it was not as warranted by Plaintiff and it was not fit for the purposes for which it was purchased... .
After both sides rested, the lower court finding that the defense offered by the defendant was insufficient as a matter of law, finds that said motion of the plaintiff for a directed verdict in said amount should be and is sustained and given.
The defendant appeals. His first argument is that a "jury question arose as to whether or not an express warranty was given by the plaintiff in this case concerning the D-7 Caterpillar and whether or not there was a breach of such warranty." Testimony offered by the defendant was that he saw two other advertisements of dozers but that he decided to do business with the plaintiff because the plaintiff's ad stated that the dozer was in "A-1 condition." He states that he relied upon this representation and argues that it was at least a jury question as to whether or not the "A-1 condition" representation was a part of the "bargain" between the parties. The defendant states in his brief that according to the UCC, Mississippi Code Annotated § 75-2-608 (1972) as buyer he had the right
to revoke his acceptance of a "commercial unit" whose nonconformity impairs its value to him. That is, if the nonconformity was reasonably induced by seller's assurances and the revocation occurs within a reasonable time after discovery of the defect.
The defendant contends that
an express warranty was given concerning the bulldozer which was sold to the defendant. This express warranty was included in the advertisement wherein the bulldozer was described as being in "A-1 condition" along with oral representations made by the plaintiff at the time of the sale.
In the presentation of his case, the plaintiff related the facts given above and stated that when he delivered the dragline harness the defendant said that he would not make the check good because he was not satisfied with the dozer. Plaintiff denied that the defendant told him the dozer did not have any power or was not as it was represented to be.
The plaintiff further testified that although the defendant said that he did not want the dozer and was not going to pay for it, he did not say anything to him about being allowed to come and get it. The plaintiff stated that during the trial he had just learned that the defendant would now offer the dozer back to him. Plaintiff, however, was unwilling to take it back because it had been some five months and because "you can tear up a dozer in that length of time." The plaintiff testified that the dragline deal was a separate transaction from the dozer sale.
In his testimony, the defendant stated that he and his brother were partners and unsuccessfully attempted to stop payment on the $5,000 check after the dragline harness had not been delivered. Then he said that because he was unable to stop payment on it since it had already been cashed, he stopped payment on the $9,500 dozer check due to the fact that the plaintiff had failed to keep his agreement on the dragline. The defendant stated that the dozer, represented to be in A-1 condition, would not properly function although he admitted that when he purchased it, he pushed a small tree and back-dragged a little of the land. He reiterated that the plaintiff told him he had just spent $7,200 on it and that it should be *1345 operable for two years without any major work. According to the defendant, when he told plaintiff that he was not happy with the dozer he gave him the alternative of taking it back after he had only used it approximately 3 hours. Excerpted from the record is the following colloquy which occurred during direct examination of Larry Taylor:
Q. Now, Mr. Taylor, did you ever make any representation to Mr. Ward about him  about rescinding the sale and him picking up the bulldozer and your delivering it back to him, and if so what representation did you make?
A. Well, one time he had called me, and I told him at that time that I wasn't happy with the dozer; that it wasn't as he said it was, and I felt that he should take the dozer back or make some type of agreement of cutting down on the price or for him to get back in touch with me if he had any second thoughts on it.
Q. What was his response to what you said?
A. I never did receive a call from him.
Q. Now, did you definitely give him an alternative of taking the tractor back?
A. Yes, sir, I sure did.
This testimony was given without objection. Further, he testified that after he bought the dragline, he and his mechanic worked on it for 5 to 6 hours trying to get it to run. He admitted trying out the dozer on the plaintiff's farm before delivering the check.
After the defendant testified, his brother Doug who purchased the dragline testified and stated that he and the defendant were brothers and purchased equipment together as partners. He stated that the sale and purchase of the dozer did not depend upon any subsequent sale of the dragline. The defendant also presented another witness, Joseph Lee Robinson, who testified that he watched the dozer in operation and said that it did not have power to push. Robinson also noted that it was not suitable for clearing land and that while Doug was operating it, the drive shaft fell out.
After hearing the evidence presented on both sides, upon request of the plaintiff, judgment was entered for the plaintiff: the court, being of the opinion that at the time Larry stopped payment on the check for the bulldozer, he had no legal right to do so. The court also sustained a motion of the plaintiff for 25% damages.
We think the appellant is correct in arguing that there was a jury question on the issue of whether there was a breach of an express warranty, and therefore, the court should not have directed a verdict for the plaintiff. As pointed out by the appellant in his brief, the court did not consider whether there had been a breach of warranty and the failure or partial failure of consideration which justified the defendant's action. The following is a pertinent portion of Mississippi Code Annotated (1972):
§ 75-2-313. Express warranties by affirmation, promise, description, sample.
(1) Express warranties by the seller are created as follows:
(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
.....
(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.
Here taking as true the testimony offered by the defendant (as we must in passing upon the peremptory instruction), it is a fact: (1) that the tractor was advertised by a published writing as being in "A-1 condition," (2) that the seller represented that he had recently spent $7,200 for work on the tractor, and (3) that it should be usable for two years without any major work. According *1346 to defendant's testimony, the dozer would not do ordinary and customary dozer uses that it was purchased for, i.e., dig fish ponds, clear land, and move earth. Defendant's testimony was that when he tried to push down small trees, it lacked sufficient power. Witness Robinson testified that the drive shaft fell out because "the holes were worn out and the bolts wouldn't stay tight." Larry Taylor's testimony quoted hereinabove establishes that he discussed with Ward that Ward should take the dozer back or make some adjustment.
The summary of the evidence shows that the plaintiff represented that the dozer was in "A-1 condition," and it appears that he knew the purposes for which the dozer was intended to be used by the purchaser, defendant Taylor. Further it is clear that according to the testimony given by the defendant, which we must accept as true in this posture, the dozer would not properly function. Of course, in many sales of used or second hand vehicles, there may not be any express warranty, but in this case there was such evidence which should have been passed upon by the jury. Therefore as an affirmative defense at least the appellant/defendant Taylor was entitled to have the jury consider the testimony and render a verdict upon proper instructions in accord with the theories presented by the pleadings and testimony. Paymaster Oil Mill Company v. Mitchell, 319 So.2d 652 (Miss. 1975).
We think that the evidence with reference to the dragline was a separate and non-related transaction and that the trial court correctly refused to allow details as to the "dragline deal" into evidence. Defendant's proffered testimony about the ads (including plaintiff's A-1 ad) showing dozers for sale was relevant and should be allowed at retrial.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., SUGG, WALKER, LEE, BOWLING, and HAWKINS, JJ., concur.